No. 31,171.

WALLACE T. ROUSE, *Plaintiff*, v. THE PARAMOUNT TRANSIT COMPANY, *Defendant*, THE MARTIN-JACKSON TIRE AND SUPPLY CORPORATION, Intervener, *Appellee*, THE .C. I. T. CORPORATION, Intervener, *Appellant*.

(22 P. 2d 429.)

Opinion filed June 10, 1933.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr.,* and *Verne M. Laing,* all of Wichita, for the appellant.

*Harold H. Malone,* of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The question in this case is whether a dealer who sells

to customers auto vehicle tires, tubes and rim, and installs them gratis, is entitled to a lien on the vehicle for the price of the articles.

The question arose between intervening creditors in an action by Wallace T. Rouse against the Paramount Transit Company, in which a receiver was appointed for the transit company. The vehicle involved is a three and a half ton Dodge truck with six wheels. The C. I. T. Corporation claimed possession of the truck under a conditional sales contract having the effect, so far as this litigation is concerned, of a chattel mortgage. The Martin-Jackson Tire and Supply Corporation claimed possession of the truck by virtue of a lien duly perfected under the statute providing for a lien for services on personal property. The principal items were for tires and tubes, and for a rim. By order of court, the truck was placed in storage to await final determination of the case. After trial by the court, judgment was rendered awarding the Martin-Jackson Company a first lien for $598.26, awarding the C. I. T. Corporation a second lien for $1,632, and providing for sale of the truck and application of proceeds. The C. I. T. Corporation appeals.

The Martin-Jackson Company has an establishment consisting of a store in which it keeps a stock of merchandise comprising automobile tires, tubes, rims and other automobile supplies, a repair shop, and a parking place for vehicles to be serviced. The truck in question was used by the Paramount Transit Company for transportation of merchandise between Wichita and Kansas City, Mo. The truck made a trip to Kansas City every night and returned to Wichita the following day. On its return, it would be parked in the Martin-Jackson Company yard and would be serviced as needed—air in the tires, flat tires repaired, new tires supplied, etc.

Automobile tires and tubes are distinct articles of merchandise sold by manufacturers to dealers who distribute them to auto vehicle users. They may not as yet be purchased at drug stores, but they may be purchased of dealers in general merchandise. Certain dealers specialize in the sale of tires and tubes. The articles are sold at list prices based on manufacturer's prices, and the seller installs the tube or tire without charge for the labor. Rims are not often kept in stocks of general merchandise. Small dealers in tires and tubes seldom keep them in stock, but other dealers do. They are sold at list prices, in this instance fixed by a wheel and rim association, just as tubes and tires are sold, and a purchase of a rim is a

purchase of the article mounted. As in other commercial transactions, large buyers and some others are allowed a discount from list prices. A transportation company having a fleet of buses was a large buyer from the Martin-Jackson Company, but did its own mounting. It was given a special discount; but the Martin-Jackson Company made no charge for the labor involved in mounting the merchandise it sold.

The statute reads as follows:

"A first and prior lien is hereby created in favor of any blacksmith, horseshoer, wagon maker, keeper of a garage, or any other person, upon any goods, chattels, horses, mules, wagons, buggies, automobiles, or other vehicles, and farm implements of whatsoever kind, which shall come into his or their possession for the purpose of having work done on said property, or repairs or improvements thereon, and said lien shall amount to the full amount and reasonable value of the services performed, and shall include the reasonable value of all material used in the performance of such services. Such lien shall be valid as long as the person claiming the same retains possession of said property, and the claimant of said lien may retain the same after parting with the possession of said property by filing within thirty days in the office of the register of deeds, under oath, a statement of the items of the account and a description of the property on which the lien is claimed, with the name of the owner thereof, in the county where the work was performed and in the county of the residence of the owner, if such shall be known to the claimant. [Revised, 1923; old sections, L. 1872, ch. 142, § 1; L. 1903, ch. 383, § 1; L. 1913, ch. 218, § 2; L. 1917, ch. 232, § 1.]" (R. S. 58-201.)

As indicated, this section is a revision. While it is based on previous statutes relating to artisan's liens, it is different from any of them, is different from the common law, and takes its place among other statutory lien statutes. Because special privileges are conferred, such statutes are strictly construed in determining to whom and for what a lien is given. (*Bridgeport Machine Co. v. McKnab,* 136 Kan. 781, 786, 18 P. 2d 186.)

The lien is for the amount and value of services performed, including value of material used in performing the service. The service is primary. The material used to effectuate the service is subordinate and collateral, and this court has so held.

"By the language of the statute and from its analogy to similar laws it is obvious that the labor upon the article intrusted to the artisan is the principal thing, the material furnished being incidental." (*Clark v. Davis,* 123 Kan. 99, 102, 254 Pac. 399.)

Among the items for which a lien was claimed were the following:

"1 900/20 truck 10-ply casing and application........................ $71.94
1 900/20 truck balloon casing, tube and application.................. 81.86
2 975/20 truck balloons and application, 2 No. 60 tubes and application, 204.52
1 975/20 truck 12-ply casing and application, 2 No. 60 heavy mold
    tubes and application....................................... 102.26
1 975/20 truck balloon casing and application....................... 78.61"

Some labor was involved in mounting tires on this big truck. The wheel might be an inner wheel of a rear pair, and to mount a tire might take two hours' time. However, the price of a tire was considerable, and each transaction was precisely the same as if the vehicle had been an Austin. A. E. Jackson testified on behalf of his company as follows:

"Q. What is your custom with reference to the sale of truck tires in this community? A. We sell these tires installed."

The result is, labor was not an element of value in the transactions, much less the necessary primary element.

Tires and tubes are not "material" incidentally used in the performance of labor. To illustrate, one item for which a lien was claimed was "1 900/20 section job, $12." There was a hole in a tire, but the tire was not unfit for service and it was repaired. Some material was used, but the charge was chiefly for labor. Other charges were for tube repairs, which we all know about. The mechanic puts a patch on a tube. The charge is chiefly for labor but includes a bit of material used in performance of the labor. Another charge was for casing repair, and another was for a boot repair of a casing, the price of the boot being $2.50. All these were lienable items, but the statute may not be stretched to embrace tires, tubes and rims sold out of stock, and this would be true if a reasonable charge were made for installation. (*Clark v. Davis*, 123 Kan. 99, 254 Pac. 399.) With respect to those articles, the merchant sells on the personal credit of the buyer.

The case of *Clark v. Davis* involved replacements and additions to a car already fitted with standard equipment. It was held there was no lien. The decision was based on the ground the articles were not "improvements" within the meaning of the statute. In the opinion it was said that if a worn tire had been replaced by a new one a different question would have been involved, which is true. Putting on a new tire in place of an old one would improve the car, and we have in this case the question left open in *Clark v. Davis*.

Granting a car has been improved, who may have a lien, a merchant or a mechanic? And for what may claimant have a lien, an article of merchandise sold without labor being a factor of the transaction, or labor performed plus value of material used to accomplish the purpose of the labor? The answers have been indicated.

The Martin-Jackson Company cites the case of *Hockaday Auto Supply Co. v. Huff*, 121 Kan. 113, 245 Pac. 1013. The court has before it the brief of the appellant in that case. No question was raised except constitutionality of the lien statute, and that was the only question decided by the court. Some cases are cited from other states construing the statutes of those states. It is not necessary to extend this opinion by presenting the statutes and reviewing the decisions. The court has no doubt respecting proper interpretation of the statute of this state.

The judgment of the district court is modified by deducting from the amount of the lien awarded the Martin-Jackson Company the price of the tires, tubes and rim installed on the truck.