(789 P.2d 1182)

No. 63,644

PIONEER OPERATIONS COMPANY, INC., *Appellant,* v. NORMAN W. BRANDEBERRY; THE FOURTH NATIONAL BANK & TRUST COMPANY OF WICHITA; MERCHANTS NATIONAL BANK OF TOPEKA; BRANDEBERRY OIL OPERATIONS, INC.; SALLY E. BRANDEBERRY; DIAMOND OIL, INC.; RUSSELL ENGINE SERVICE, INC.; STERLING BUTANE, INC.; KIZZAR WELL SERVICE, INC.; SENTINEL MACHINE & SUPPLY COMPANY; SERVICE ACID, INC.; AND ENGLISH OIL SERVICE, INC., *Appellees.*

Opin-
ion filed April 6, 1990.

*Michael S. Holland,* of Russell, for the appellant.

*Terry C. Cupps* and *Michael C. Gillespie,* of Foulston & Siefkin, of Wichita, for appellee The Fourth National Bank & Trust Company of Wichita.

Before ABBOTT, C.J., BRISCOE, J., and MELVIN M. GRADERT, District Judge, assigned.

GRADERT, J.: Pioneer Operations Company, Inc., (Pioneer) appeals the district court's determination that The Fourth National Bank & Trust Company of Wichita's security interest in Brandeberry Oil Operations, Inc.'s fractional working interest in numerous oil and gas leases was superior to Pioneer's mechanics' liens.

Brandeberry Oil Operations, Inc., (Brandeberry) is owned by Norman W. Brandeberry and Sally E. Brandeberry. In 1984, Norman Brandeberry assigned his working interests in oil and gas leases to Brandeberry, the corporate entity. Brandeberry's primary assets consist of working interests in oil and gas properties.

Pioneer is the operator of the property in which Brandeberry has a working interest. Pioneer began paying Brandeberry's working expenses in May 1984. Pioneer filed mechanics' liens on some, but not all, of Brandeberry's property. When Pioneer filed the liens in the spring of 1986, Brandeberry's property was already subject to mortgages and security agreements.

On November 28, 1985, Brandeberry, Norman W. Brandeberry, and Sally E. Brandeberry executed two promissory notes to The Fourth National Bank & Trust Company of Wichita (Bank IV). The indebtedness is secured, in part, by mortgages and security agreements covering all of Brandeberry's working interest and revenue interest. Bank IV properly filed its security agreements on the Brandeberry property in March and May of 1985. Therefore, Pioneer began furnishing operating expenses to Bran-

deberry before Bank IV filed its security interests, but Bank IV perfected its security interests before Pioneer filed its mechanics' liens.

Brandeberry is also indebted to Merchants National Bank of Topeka (Merchants), but that debt and security agreement are not relevant to this appeal as they are second in priority to Bank IV's.

On March 28, 1986, Brandeberry, Norman W. Brandeberry, and Sally E. Brandeberry defaulted on the Bank IV notes. On May 16, 1986, Pioneer brought this action seeking to recover for Brandeberry's proportionate share of the operating expenses due on the liened property. On June 23, 1987, Pioneer was allowed to amend its petition to include a quantum meruit claim against Bank IV and Brandeberry.

Brandeberry and Norman and Sally Brandeberry have subsequently declared bankruptcy and are judgment proof.

On January 27, 1988, the district court issued a journal entry of partial judgment. The district court determined the priorities of the three claimants. Bank IV was declared first in priority, Merchants second, and Pioneer third. Brandeberry's assets are apparently insufficient to satisfy all of the claimants. The district court certified this judgment for appeal pursuant to K.S.A. 1989 Supp. 60-254(b).

On July 1, 1988, the district court entered judgment against Pioneer on its remaining claim seeking recovery from Bank IV in quantum meruit. On July 14, 1988, Pioneer filed a notice of appeal from both the January 27, 1988, and July 1, 1988, journal entries.

Bank IV first contends Pioneer's failure to timely appeal from the January 27, 1988, judgment bars this appeal and, thus, that judgment is determinative on the issue of priorities.

Generally, this court may only review final decisions; orders which do not dispose of all of the parties or of all claims are interlocutory and not subject to appellate review. See *Skahan v. Powell*, 8 Kan. App. 2d 204, 205, 653 P.2d 1192 (1982).

K.S.A. 1989 Supp. 60-254(b), which is identical to Fed. R. Civ. Proc. 54(b), creates an exception to the general rule. It provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim or, when multiple

parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

In this case, the district court, using the proper statutory language, certified that the journal entry of partial judgment on January 27, 1988, was a final judgment and that there was no just reason for delay. See *City of Salina v. Star B, Inc.*, 241 Kan. 692, Syl. ¶ 1, 739 P.2d 933 (1987). As with other civil appeals, Pioneer was required to file a notice of appeal within 30 days. K.S.A. 1989 Supp. 60-2103. However, Pioneer did not file a notice of appeal until July 14, 1988, following the district court's entry of partial judgment on July 1, 1988, which disposed of Pioneer's quantum meruit claim against Bank IV. The notice of appeal states that Pioneer is appealing both the January 27, 1988, and July 1, 1988, journal entries of partial judgment.

The issue is whether Pioneer's failure to timely appeal from the January 27, 1988, journal entry of partial judgment bars this appeal on the issue of priorities. Pioneer contends the district court erroneously characterized Pioneer's suit as involving multiple claims and that it should be allowed to attack this error even though it did not appeal within 30 days. Bank IV responds that the 30-day limitation is jurisdictional and acts as a complete bar to this appeal on the issue of priorities.

We conclude that, because Pioneer filed a timely notice of appeal following the July 1, 1988, journal entry of partial judgment, it can now attack the propriety of the K.S.A. 1989 Supp. 60-254(b) certification. We also conclude the district court erred in certifying the journal entry of partial summary judgment on the priorities issue as a final judgment.

In *Dennis v. Southeastern Kansas Gas Co.*, 227 Kan. 872, 610 P.2d 627 (1980), our Supreme Court considered 60-254(b). In *Dennis*, the plaintiffs attempted to attack a cross-claim which had been certified as a final judgment pursuant to 60-254(b). The

issue decided in the cross-claim was fatal to the plaintiffs' primary claim. However, the plaintiffs did not file a notice of appeal from that judgment.

The Kansas Supreme Court held the judgment on the cross-claim was res judicata and binding on the plaintiffs and was not reviewable on appeal. The court explained:

"Under the federal decisions once there has been a Rule 54(b) certification and a final judgment has been entered, the time for appeal begins to run. It has res judicata effect if no appeal is taken during the time permitted for an appeal. [Citations omitted.] In interpreting K.S.A. 60-254(b), we adopt and follow the federal decisions which interpret Rule 54(b) of the Federal Rules of Civil Procedure. If a certification and final judgment has been entered pursuant to K.S.A. 60-254(b), the time for appeal immediately commences to run and such a judgment becomes res judicata where a timely appeal is not taken by an aggrieved party. If a timely appeal is not taken in such a case, such a judgment may not later be reviewed as an intermediate ruling when an appeal from the final judgment disposing of the entire case is taken pursuant to K.S.A. 60-2102. We have, therefore, concluded that the judgment of the trial court in favor of the city on its cross-claim against the gas company, granting indemnity to the city, is a final and binding judgment and is not reviewable on this appeal under the provisions of K.S.A. 60-2102(a)(4)." 227 Kan. at 878.

Although the language in *Dennis* could be read as dispositive in this case, the plaintiffs in *Dennis* did not argue that the district court erred in issuing the K.S.A. 60-254(b) certification. They merely argued that any action taken by the court from the beginning of the litigation is reviewable if an appeal is properly perfected after the final decision of the trial court terminating the litigation. 227 Kan. at 876-78. Therefore, the precise issue of this case was not before the *Dennis* court.

The *Dennis* decision purports to follow federal decisions which interpret Rule 54(b). In none of the cases cited by the *Dennis* court did the appellant argue that the district court had erroneously entered a Rule 54(b) certificate. In *Page v. Preisser*, 585 F.2d 336 (8th Cir. 1978), the court considered the precise issue of this case:

"In most cases, however, unlike the present action, the party challenging the certification takes a timely appeal from the court's order. Our research has failed to disclose any cases specifically deciding whether a party who neglects to take a timely appeal from a district court's Rule 54(b) certification may challenge the propriety of that certification after the period of time for

taking an appeal has expired; and if the certification is held to have been erroneous, whether the party may, in his appeal from the court's final judgment of the remaining claims, seek review of the district court's adverse decision on the substantive claim underlying the Rule 54(b) certification.

"We hold that such challenges may be made; and when a district court erroneously certifies a claim as appropriate for immediate appeal under Rule 54(b), a party may raise that claim in a timely appeal from an adverse decision on the remaining claims in the lawsuit. While, technically, the period for taking an appeal begins to run from the time the district court enters final judgment pursuant to the Rule 54(b) certification, if the certification is erroneous, there is, in fact, no proper final judgment from which a party must appeal. Thus, if an action involving a single claim is incorrectly categorized by the district court as one involving multiple claims, a party ought not be precluded from raising the propriety of the court's certification in a timely appeal from an adverse judgment on the other claims in the lawsuit." 585 F.2d at 338.

Because we conclude *Dennis* is not dispositive, it is necessary to determine whether the district court improperly categorized Pioneer's suit as multi-claim and properly certified the judgment pursuant to 60-254(b).

The Supreme Court of Kansas, following *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 64 L. Ed. 2d 1, 100 S. Ct. 1460 (1980), recently considered the appropriate standard of review of a 60-254(b) certification:

" 'The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such judicial concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." [Citation omitted.] The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable.' " *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 276, 777 P.2d 1259 (1989).

Wright and Miller discuss the appropriate standard of review: "As a general rule the appellate court will give weight to the district judge's characterization of the action, in light of his first hand knowledge, although it will not feel bound by it." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2656, pp. 49-50 (1983).

"In sharp contrast to determining the existence of multiple parties, the question of when a case presents multiple claims

often is a difficult one." 10 Wright & Miller, § 2656, p. 49. "The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure. . . . There is no generally accepted test that is used to determine whether more than one claim for relief is before the court." 10 Wright & Miller, § 2657, pp. 60-61.

Wright and Miller believe the Second Circuit has developed a workable test to determine whether multiple claims exist:

" 'The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced' [quoting *Rieser v. Baltimore & Ohio R. R. Co.*, 224 F.2d 198, 199 (2d Cir.), *cert. denied* 350 U.S. 1006 (1955)].

. . . .

"A single claimant presents multiple claims for relief under the Second Circuit's formulation when his possible recoveries are more than one in number and not mutually exclusive or, stated another way, when the facts give rise to more than one legal right or cause of action. Illustratively, in the Sears [Roebuck & Company v. Mackey, 351 U.S. 427] case defendant could have been held liable both under the antitrust acts and the common law. Since there were two possible recoveries and they were not mutually exclusive, there were two claims for relief, even though at least in part they both were based on the same facts. However, when a claimant presents a number of legal theories, but will be permitted to recover only on one of them, his bases for recovery are mutually exclusive, or simply presented in the alternative, and he has only a single claim for relief for purposes of Rule 54(b). Similarly, when plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and sub-division (b) does not apply." 10 Wright & Miller, § 2657, pp. 65-71.

The court in *Page*, 585 F.2d 336, considered the policies underlying this view:

" 'The trial judge is generally not permitted to certify the dismissal of fewer than all of a party's counts when his remaining counts deal with the same transaction or occurrence as those appealed. * * * By thus forbidding certification of an order dismissing fewer than all of a party's legal theories based on the same transaction, the courts leave open the possibility that the party will still be awarded relief, an event that would render unnecessary an appellate determination on the dismissal; this possibility disappears where no alternative theory for relief remains. * * * In addition to eliminating unnecessary appeals, [this approach] avoids appellate review of the same evidence on more than one appeal.' " 585 F.2d at 339.

Returning to the case at bar, does Pioneer present one claim or multiple claims? Pioneer argues that it is seeking relief on only one claim, with alternative, mutually exclusive remedies. Bank IV contends Pioneer is presenting two separate, distinct claims, each based on separate facts and seeking distinctly different remedies.

Pioneer correctly notes that, had it immediately appealed the priority ruling, during the pendency of that appeal, the district court could have ruled in favor of Pioneer on the theory of unjust enrichment which would have rendered the appeal on the priorities issue moot. Conversely, if Pioneer had appealed the priorities issue and won, at least a portion of the district court's findings in regard to the quantum meruit claim would have been moot.

"A similarity of either legal or factual issues (or both) militates strongly against invocation of Rule 54(b). [Citations omitted.] It does not strike us as betokening sound judicial administration for an appellate court and a trial court to be simultaneously passing upon different legal theories in a situation involving the same parties and, basically, the same facts. Nor does a thesis which encourages such an awkward posture to develop strike us as a sensible construction of Fed. R. Civ. P. 54(b)." *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 45 (1st Cir. 1988.)

However, Bank IV is correct that the priorities claim and the quantum meruit claim are not wholly mutually exclusive. At best, if Pioneer had prevailed on the priorities claim, it could have only recovered $90,741.33, which represents the amount of liens against Brandeberry property. Although the parties dispute the amount of money Pioneer has contributed for working expenses, Pioneer claims to have paid $400,649.99 in expenses. Obviously, these amounts differ. However, both amounts come from the same expenditures. The $90,741.33 is a subset of the amount that Pioneer could have hypothetically recovered on its quantum meruit claim.

Militating against finding the claims mutually exclusive is the fact that the January 27, 1988, judgment determines the priority of liens on the oil and gas leases and is not a judgment against Bank IV. Pioneer's quantum meruit claim is vis-a-vis Bank IV and Brandeberry. This elevates form over substance; in actuality the priority battle boils down to a contest between Bank IV and

Pioneer. Under both theories advanced by Pioneer, it is attempting to recover for working expenses advanced.

In the final analysis, it was error to certify the priorities claim for immediate review. Although the priorities claim seems to split off neatly from the quantum meruit claim, both theories are based on the same facts and are basically alternative means of recovery. Although deference is given to the trial court's determination that immediate appellate review is appropriate, the appellate courts are the ultimate arbiters of whether certification was proper. See *St. Paul Surplus Lines Ins. Co.*, 245 Kan. at 276. In this case, the district court erred in certifying the priorities issue for immediate appeal. Therefore, Pioneer may attack the January 27, 1988, journal entry.

Pioneer next contends that the district court erred as a matter of law in determining the priorities. Pioneer cites *D Oil, Inc. v. Brungardt*, 13 Kan. App. 2d 142, 764 P.2d 851 (1988), *rev. denied* 244 Kan. 736 (1989), in support of this contention. *Brungardt* is dispositive on this issue; the district court erred as a matter of law in interpreting priorities. In *Brungardt*, this court held:

"[A]n oil and gas lien claimant has priority dating from the commencement of the furnishing of labor or materials and thus has priority over a subsequent mortgagee even though the working interest owner is current in his payments to the lien claimant at the time the mortgage is recorded." 13 Kan. App. 2d 142, Syl. ¶ 2.

"[This rule] recognizes the basic philosophy behind the oil and gas lien statute: where one by agreement with an owner enhances the value of the leasehold by furnishing labor or materials, that person should have an interest in the lease to the extent of the value of the labor and materials furnished." 13 Kan. App. 2d at 143.

Conversely, giving credit to the mortgagee would allow it to reap the benefits of the work performed by the party with the mechanic's lien to the detriment of the party providing the benefit or enhancement. 13 Kan. App. 2d at 143.

In this case, Pioneer began contributing working expenses in May 1984, before Bank IV filed its security agreement. Therefore, the district court erred as a matter of law in determining priorities, and Pioneer's mechanics' liens should have prevailed over Bank IV's security interest.

Bank IV basically concedes *Brungardt* is on point; however, Bank IV dedicates several pages of its brief arguing *Brungardt*

was wrongly decided. *Brungardt* is dispositive on the priorities issue in this case. We stand by *Brungardt* as a correct statement of Kansas law.

Although we conclude Pioneer can attack the January 27, 1988, judgment, this case must be remanded to allow the parties to contest the validity of the liens. Because the district court considered Pioneer's mechanics' liens to have third priority, it was not necessary for the court to determine the validity of the mechanics' liens. The parties agreed to the validity of the mechanics' liens only for the purpose of the partial journal entry.

Although this case must be remanded to determine the validity of Pioneer's mechanics' liens, we are compelled to consider Pioneer's quantum meruit claim. We conclude the district court did not err in finding that Pioneer could not recover from Bank IV under a quantum meruit claim.

The district court determined that, although Bank IV was enriched by Pioneer's payment of operating expenses, it was not unjustly enriched. The note and mortgage agreements entitle Bank IV to 100% of the runs attributable to Brandeberry's working interests. Pioneer voluntarily undertook to pay Brandeberry's expenses. By its conclusion, the court adopted the rule that a mortgagee does not become responsible for operating costs attributable to the mortgagor's working interests so long as the mortgagee is not receiving all of the runs attributable to all of the working interests in an oil or gas lease; however, if the mortgagee receives all of the runs attributable to all of the working interests in an oil or gas lease, the mortgagee is responsible for operating costs.

The district court concluded that Bank IV was not being unjustly enriched by Pioneer's payment of operating expenses attributable to Brandeberry's working interests.

The district court considered only documentary evidence in reaching the conclusion that Pioneer did not have a valid quantum meruit claim.

" 'Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to de-

termine *de novo* what the facts establish.' " *Bell v. Tilton,* 234 Kan. 461, 468, 674 P.2d 468 (1983) (quoting *Stith v. Williams,* 227 Kan. 32, Syl. ¶ 2, 605 P.2d 86 [1980]).

The rule fashioned by the district court that does not allow a supplier of operating expenses to bring a quantum meruit claim against a mortgagee which receives less than 100% of the oil runs is a question of law, subject to unlimited review. See *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

Pioneer contends the district court erred in failing to recognize a claim of unjust enrichment. Pioneer claims it is patently unfair for Bank IV to have received the benefit of Pioneer's payment of operating expenses while receiving $714,958.92 in oil runs.

Quantum meruit is an equitable doctrine. "Restitution and unjust enrichment are modern designations for the older doctrine of quasi-contracts." *Peterson v. Midland Nat'l Bank,* 242 Kan. 266, 275, 747 P.2d 159 (1987). "The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties." *Holiday Development Co. v. Tobin Construction Co.,* 219 Kan. 701, 708, 549 P.2d 1376 (1976). "The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him." *Peterson,* 242 Kan. at 275.

No Kansas cases are directly on point. The rule adopted by the district court, however, is apparently the majority rule of the few states that have considered the issue. "While a mortgagee may in some situations have [its] security subjected to a materialman's lien for work done after the date of the mortgage, [it] does not ordinarily become personally liable for operating costs even though under the agreement [it] receives most of the proceeds." 3 Summers, Oil and Gas § 557, p. 707 (1958). "[W]here a mortgagee . . . receives all of the revenues derived, or production from an oil and gas mining lease, covered by [its] mortgage . . . the mortgagee becomes liable for the labor, and for all necessary expenses incurred by reason of the continued operation of the lease." *First Nat. Bank v. Matlock,* 99 Okla. 150, Syl. ¶ 1, 226 Pac. 328 (1924).

Bank IV contends that decisions interpreting general mechanic's lien statutes are controlling, insofar as they are applicable, in oil and gas lien cases. *DaMac Drilling, Inc. v. Shoemake,* 11 Kan. App. 2d 38, 713 P.2d 480 (1986), does stand for this proposition. However, as Judge Abbott noted in his dissent in *Interlake, Inc. v. Kansas Power & Light Co.,* 7 Kan. App. 2d 16, 23, 637 P.2d 464, *rev'd* 231 Kan. 251, 644 P.2d 385 (1982), this is probably an incorrect statement of Kansas law. "The general lien statutes are useful only to the extent they might shed some light on legislative intent in construing K.S.A. 55-207 and 55-208." 7 Kan. App. 2d at 23-24. The Supreme Court, in its opinion, stated, "The general lien statutes (K.S.A. 60-1101 *et seq.*) do not apply to oil and gas leases." 231 Kan. at 253.

In this case, Bank IV has been enriched by Pioneer's payment of the operating expenses. However, Pioneer could have protected itself by filing mechanics' liens on all of Brandeberry's property on which it paid operating expenses. The rule adopted by the district court is not wholly unfair and was correctly applied to the facts of this case; Bank IV did not receive all of the runs attributable to the working interests of any oil or gas leases.

Affirmed in part, reversed in part, and remanded with directions.