(798 P.2d 511)
No. 64,489

MARK TWAIN KANSAS CITY BANK, *Plaintiff/Appellee*, and CONTI-
NENTAL CONSTRUCTION ENGINEERS, *Plaintiff/Appellant*, v.
KROH BROTHERS DEVELOPMENT CO., *et al.*, *Defendants*, and
JOSEPH J. FURMAN AND LAWRENCE H. FURMAN, P.C., *Plaintiff/
Appellant*, v. KROH BROTHERS DEVELOPMENT CO., *Defendant.*

Opinion filed September 21, 1990.

*Steven B. Moore* and *Kenneth C. Jones*, of Watson, Ess, Marshall & Enggas, of Olathe, for the appellant Continental Construction Engineers, Inc.

*Ronald P. Wood*, of Gates & Clyde, Chartered, of Overland Park, for the appellant Joseph J. Furman and Lawrence H. Furman, P.C.

*Ron Bodinson, J. Richard Golub, Barbara A. Harmon*, and *Shala M. Bannister*, of Shook, Hardy & Bacon, of Overland Park, and *Stephen D. Aliber*, of Shook, Hardy & Bacon, of Kansas City, Missouri, for the appellee.

Before RULON, P.J., BRISCOE and LARSON, JJ.

BRISCOE, J.: Continental Construction Engineers (Continental) and Joseph J. Furman and Lawrence H. Furman, P.C., (Furman) appeal the district court's decision that they were not entitled to mechanics' liens against mortgaged property on which Mark Twain Kansas City Bank (Bank) foreclosed. We affirm.

The facts in this case are not in dispute. In 1986, Kroh Brothers Development Co. (Kroh) executed two promissory notes to the Bank, secured by separate mortgages on the Krohs' property. In anticipation of construction of a retail shopping area on the mortgaged property, the Krohs contracted with Furman for architectural and engineering services and with Continental for preliminary civil engineering work. According to its lien statement, Continental provided the following professional services relating to the Krohs' property: (1) utility research; (2) preparation of a new road profile; (3) preparation of proposed utility location; (4) preparation of frontage road widening details; (5) review of project with waste water district; (6) preparation of proposed util-

ity relocations; (7) meeting with Kroh staff; (8) review of project with KCP&L; (9) meeting with staff; (10) earthwork quantity checks; (11) regrading plans; and (12) finalizing sewer plan revisions. According to an affidavit by the Krohs' project supervisor, the work performed by Continental enabled the Krohs to obtain a zoning change on the property. What this zoning change was is not clear from the record. According to its lien statement, Furman's lien covers all "labor and material furnished, used, and consumed in preparing the drawings and specifications and coordinating the work on said site with the site engineer and also preparing the architectural and engineering drawings for the retail space," including the following specific professional services: (1) preparation of drawings and specifications; (2) complete coordination of all trades; (3) finalization of topography recommendation; (4) redesign of front of building to conform with site plan approval; (5) redesign of foundation system; and (6) obtaining a variance with the Code Board of Appeals of Overland Park, Kansas. The record indicates this variance would allow construction of "the building" without smoke and heat venting. It is undisputed that the Bank was aware of the activities of both Continental and Furman.

Before any construction began, the Krohs went into bankruptcy. Neither Continental nor Furman had been paid. The Bank filed a petition to foreclose on the real estate mortgages and, soon thereafter, Continental and Furman filed mechanics' liens. Continental intervened in the foreclosure action to foreclose on its mechanic's lien. Furman filed a separate petition to foreclose on its mechanic's lien, which was consolidated with the Bank's foreclosure. The Bank filed a motion for summary judgment, contending the mechanics' liens of Continental and Furman were invalid because the labor and services furnished were never utilized in the construction of any structure or any improvement upon the real estate. The court granted the Bank's summary judgment motion, holding the professional services provided by Continental and Furman in preparation for construction were never used or consumed in any improvement of the real property within the meaning of K.S.A. 60-1101, citing *Benner-Williams, Inc. v. Romine*, 200 Kan. 483, 485, 437 P.2d 312 (1968). In *Benner-Williams*, the Supreme Court held: "In order for a me-

chanic's lien for labor and materials to attach, such items must be used or consumed for the improvement of real property, and thus become part of the realty itself." 200 Kan. at 485. The labor and materials at issue in *Benner-Williams* were evidenced by the completed remodeling of a house, principally the installation of carpeting and cabinets.

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The reviewing court must read the record in the light most favorable to the party opposing the motion. *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 830, 752 P.2d 653 (1988). However, the parties in this case agree there are no disputed material facts and that this case presents a purely legal question concerning the interpretation of 60-1101. Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984).

The sole issue presented is whether the architectural and engineering services provided by Continental and Furman constituted lienable labor resulting in an improvement to real property within the meaning of 60-1101 when construction was never commenced and there appeared no visible or physical manifestation of either Continental's or Furman's work on the property. This issue is an issue of first impression for the Kansas appellate courts.

Continental and Furman contend the district court erred in holding their respective mechanics' liens invalid. They contend 60-1101 does not require a visible improvement to real property when the third-party mortgagee (the Bank) had actual notice of the expenditure of lienable labor, and where the value of the real property has been increased by the leinholders' labor. Continental and Furman contend the value of the Krohs' property was intrinsically increased by the zoning change and by the benefit to any potential buyer of knowing utility plans, road widening, grading, and zoning had already been addressed. Continental and Furman argue that any eventual buyer will utilize the services which each has performed. Therefore, if left uncompensated, the conferral of such benefits upon the property would result in unjust enrichment.

The Bank contends the liens are invalid because the labor and services furnished by Continental and Furman were never utilized in the construction of any structure or any improvement upon the property. The Bank agrees that the labor and services supplied by Continental and Furman were of assistance in obtaining a change of zoning and variances, but it disputes that these changes significantly benefited the property. The Bank contends the real estate was not intrinsically increased in value by the labor and services provided by Continental and Furman. The Bank argues 60-1101 and case law from other jurisdictions support its contention that a mechanic's lien extends only to real estate upon which a visible improvement is erected. See *Gollehon, Schemmer, Etc. v. Fairway-Bettendorf*, 268 N.W.2d 200 (Iowa 1978); *Goebel v. National Exchangors, Inc.*, 88 Wis. 2d 596, 277 N.W.2d 755 (1979).

K.S.A. 60-1101 provides:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them."

Since mechanics' liens are statutory liens, they can only be acquired in the manner and on the conditions prescribed in the statute. *General Air Conditioning Corp. v. Stuewe*, 156 Kan. 182, Syl. ¶ 2, 131 P.2d 638 (1942). Those claiming a mechanic's lien have the burden of bringing themselves clearly within the provisions of the statute. *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, 274, 679 P.2d 736 (1984). While courts give liberal construction to statutory provisions once a mechanic's lien has attached (*Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 100, 692 P.2d 397 [1984]), strict construction in the absence of equitable considerations is the rule when deciding whether a lien attaches (*Goodyear Tire & Rubber Company v. Jones*, 317

F. Supp. 1285, 1289 [D. Kan. 1968], *aff'd* 433 F. 2d 629 [10th Cir. 1970]).

The general theory of liens is that labor expended and materials supplied in the construction of an improvement add an actual value to the property. The property, therefore, may be properly bound as security for payment of labor which enhances its value. See *Given v. Campbell*, 127 Kan. 378, 380, 273 Pac. 442 (1929). A mechanic's lien which has attached is good against any subsequent purchasers for value and without notice, even if no lien statement is filed until after the conveyance. The work itself constitutes notice to the world of the existence of the lien. *Lenexa State Bank & Trust Co. v. Dixon*, 221 Kan. 238, 241, 559 P.2d 776 (1977). Continental cites a number of cases from other jurisdictions in support of its contention that visible construction on the site is unnecessary to confer notice if interested parties (here, the Bank) have *actual* notice of the labor. The cases cited, however, involve statutes which expressly provide for architects' and engineers' mechanics' liens and include specifically or by implication off-site designs and drawings within their definition of "improvement."

Lien statutes cannot be extended by implication beyond the clear import of the language employed and their operation cannot be enlarged to include activities not specifically embraced. It is well settled that, where a statute is clear and unambiguous, the court must give effect to the expressed legislative intent without regard to what the court thinks the law should or should not be. *In re Tax Appeal of Bernie's Excavating Co.*, 13 Kan. App. 2d 476, 479, 772 P.2d 822, *rev. denied* 245 Kan. 784 (1989).

Neither party questions that the architectural and engineering work performed by Continental and Furman qualifies as "labor," as contemplated by the use of that term in 60-1101. Numerous decisions now recognize that the term "labor" as used in mechanic's lien statutes is broad enough to include mental or physical toil, bodily or intellectual exertion. 51 C.J.S., Labor, p. 544. The fact that someone has performed labor is not in itself sufficient to give rise to an enforceable lien under 60-1101. The labor must also be "used or consumed for the improvement of real property." The statute also refers to the furnishing of labor "at the site of the property."

Our decision in the present case turns upon our interpretation of "improvement" as contained in 60-1101. We do not address the more troublesome issues of whether a mechanic's lien can attach for off-site architectural and engineering services if construction is commenced and, if a lien can attach, what priority it would be given as against other liens.

The plain language of the mechanic's lien statute supports the Bank's contention that Continental and Furman are not entitled to mechanics' liens when no visible construction was ever commenced on the Krohs' property. As previously stated, 60-1101 requires that the labor and materials must be "used or consumed for the improvement of real property." In *Seyb-Tucker Lumber and Implement Co. v. Hartley*, 197 Kan. 58, 62-63, 415 P.2d 217 (1966), the court addressed whether delivery of materials to a building site was sufficient to sustain a mechanic's lien under 60-1101. The court held mere delivery was insufficient. The materials had to be actually used in the construction of the building in order to sustain a mechanic's lien. K.S.A. 60-1101 should be given the same interpretation when determining whether a mechanic's lien attaches as a result of the labor expended by Continental and Furman.

The rationale for allowing a lien is to afford effective security to persons designated in the statute who have done acts described in the statute. The requirement of visible activity on the site serves to put the world on notice of the rights of those who furnish labor or materials for the improvement. When no construction begins, no visible evidence of possible liens exists. Although the Bank in this case had knowledge of the services provided by Continental and Furman, their services did not result in an "improvement" to the property as contemplated by the mechanic's lien statute.

Although 60-1101 does not define "improvement," it is generally defined as any physical addition made to real property that enhances the value of the land. See *Stickney v. Murdock Steel & Engineering, Inc.*, 212 Kan. 653, 656, 512 P.2d 339 (1973); *Benner-Williams, Inc. v. Romine*, 200 Kan. at 485; *Southwestern Electrical Co. v. Hughes*, 139 Kan. 89, 93, 30 P.2d 114 (1934); *Hill v. Bowers*, 45 Kan. 592, 593, 26 Pac. 13 (1891). Here, neither Continental's nor Furman's plans and drawings have resulted in

any physical improvement or development on the Krohs' property. Some visible improvement must be made in order to put those who seek to acquire an interest in the land on notice that building has commenced on the property. See *Mortgage Co. v. Weyerhaeuser*, 48 Kan. 335, 343, 29 Pac. 153 (1892). To allow a lien to attach where there is no visible effect on the real estate is contrary to the reason mechanics' liens are given priority over other liens that are subsequent to the commencement of the work improving the property. See K.S.A. 60-1101. To allow a lien where the property was not visibly improved by the labor provided would require an amendment to the present mechanic's lien statute. See *Torkko/Korman/Engineers v. Penland Ventures*, 673 P.2d 769 (Alaska 1983).

Both Continental and Furman rely extensively on *DaMac Drilling, Inc. v. Shoemake*, 11 Kan. App. 2d 38, 713 P.2d 480 (1986), a case involving oil and gas liens under K.S.A. 55-207, a statute similar to the mechanic's lien statute. *DaMac* is not compelling authority because it applies a different statute than the statute at issue in the present case and is also factually distinguishable.

First, as an oil and gas lien case under 55-207, *DaMac* is of limited value in determining the applicability of the mechanic's lien statute, K.S.A. 60-1101. Second, *DaMac* focuses on the definition of "labor" under 55-207 and whether on-site services provided by a geologist fall within that definition. The issue in the instant case is not whether the services provided by Continental and Furman constituted "labor," but rather whether those services resulted in "the improvement of real property."

Finally, to the extent *DaMac* addresses the issue of improvement of property, it is clear that the improvement involved is factually distinguishable from the improvement claimed by Continental and Furman. In *DaMac*, the services were provided *on-site* and were in actual aid of the drilling work and were labor performed in completing an oil or gas well. 11 Kan. App. 2d at 44. Thus, the services in *DaMac* were part of an actual physical improvement on the property. In *DaMac*, this court adopted the following definition of "labor" under the relevant statute: "Work performed in the on-site advancement of the construction, repair or operation of an oil or gas well." 11 Kan. App. 2d at 46. Contrary to the *DaMac* case, the services performed by Continental and

Furman were not in conjunction with any actual physical improvements on the property. They did not accompany any actual physical construction or repair.

Moreover, *DaMac* notes that the services must be of a type "which improves the property in a manner which would be apparent to third-party purchasers so that they would be put on notice that lienable claims may be outstanding." 11 Kan. App. 2d at 45-46. Continental and Furman suggest that, because the Bank had actual notice of services performed, this notice requirement is met. However, it is clear that the emphasis in *DaMac* is not whether a third party had actual notice, but rather whether the services constitute "observable work on the property" to all third parties. 11 Kan. App. 2d at 46. Unlike the services in *DaMac*, the services here were not "observable work on the property."

Affirmed.