(908 P.2d 1315)

No. 72,869

SECURITY BENEFIT LIFE INSURANCE CORPORATION, *Plaintiff*, v. FLEMING COMPANIES, INC., *Appellee/Cross-Appellant.*

DATA SYSTEMS, INC., d/b/a RETAIL DATA SYSTEMS OF TOPEKA, *Appellant/Cross-Appellee*, v. COLBY FOODS, INC., *Appellee/Cross-Appellant.*

Opinion filed December 22, 1995.

*Mark W. McKinzie* and *John M. Ross*, of Wallace, Saunders, Austin, Brown, and Enochs, Chartered, of Overland Park, for appellant/cross-appellee.

*Henry J. Schulteis*, of Topeka, for appellee/cross-appellant Fleming Companies, Inc.

*Norman R. Kelly* and *Robert A. Martin,* of Norton, Wasserman, Jones & Kelly, of Salina, for appellee/cross-appellant Colby, Inc.

Before ELLIOTT, P.J., MARQUARDT, J., and DAVID PRAGER, Chief Justice Retired, assigned.

MARQUARDT, J.: Retail Data Systems, Inc., d/b/a Retail Data Systems of Topeka (RDS), appeals the district court's summary judgment ruling that RDS's lien, filed pursuant to K.S.A. 58-201, was limited in recovery to a portion of the amount claimed for services and equipment it provided to Larry's I.G.A., Inc., (Larry's I.G.A.). RDS appeals. Fleming Companies, Inc., (Fleming) and Colby Foods, Inc., (Colby Foods) cross-appeal, arguing that RDS was not entitled to any recovery under this lien. We affirm in part and reverse in part.

On August 1, 1989, Fleming extended credit to Larry's I.G.A. and received a security interest in "[a]ll furniture, fixtures, equipment and machinery now owned and hereafter acquired and proceeds." The district court found that Fleming's filing of financing statements with the Thomas County Register of Deeds and the Secretary of State perfected its security interest in the enumerated items.

On March 5, 1992, RDS contracted with Larry's I.G.A. whereby RDS agreed to provide services, material, and equipment to be used for the checkout system at Larry's I.G.A. On May 12, 1992, RDS installed the new Casio equipment and removed the old Omron equipment, including the cash registers and the master units. In addition to installing the new equipment, RDS converted the existing scanners and scales so that they would function with the new equipment. The work to convert the scales and scanners cost $1,830. The total contract price for equipment, installation, conversion, and training of employees was $46,280.

RDS last performed work on the checkout system at Larry's I.G.A. on July 8, 1992. On October 6, 1992, pursuant to K.S.A. 58-201, RDS filed a "MATERIAL AND SERVICES LIEN STATEMENT" with the Thomas County Register of Deeds.

Larry's I.G.A. suffered financial difficulties. On July 8, 1992, the same day RDS completed its work on the checkout system, Flem-

ing and Larry's I.G.A. entered a written agreement whereby Larry's I.G.A. voluntarily surrendered the collateral of the store, including the checkout system, to Fleming. When Fleming took Larry's I.G.A., it had full knowledge that RDS had never been paid for the equipment and services RDS had provided Larry's I.G.A.

Fleming then created a corporation, Colby Foods, to operate the store. In the Buy and Sell Agreement between Fleming and Colby Foods, Fleming, knowing that RDS had not been paid, stated:

"[I]n regard to the CASIO front-end scanner equipment, that such equipment was found in the premises at the time SELLER assumed possession. SELLER has *no knowledge as to the nature of any agreement between the former operator and the vender of this equipment and therefore BUYER will be required to make arrangements to retain said equipment in the event a valid claim of ownership is sustained by the vender.* Vender has heretofore made claim to ownership by letter to SELLER dated August 17, 1992, copy attached as Exhibit B, which claim has been denied by SELLER." (Emphasis added.)

Colby Foods operated the store until it was sold to Howard Leroy Warren on August 29, 1992. Warren purchased the store with the knowledge that RDS had not been paid.

Security Benefit Life Insurance Company (SBL) had a mortgage on the real estate on which the store was located, and it sued to foreclose the mortgage. RDS and Fleming were parties to this action. On December 7, 1992, RDS filed a cross-claim, counterclaim, and third-party petition to foreclose its security interest in the equipment and services it provided to Larry's I.G.A.

RDS filed a motion for summary judgment claiming a first priority lien, pursuant to K.S.A. 58-201, for $42,785, which covered all of the services, materials, and equipment provided to Larry's I.G.A. As an alternative theory of recovery, RDS also made a claim for equitable relief based on unjust enrichment. Fleming and Colby Foods each filed a memorandum in opposition to RDS's motion for summary judgment. Fleming and Colby Foods also filed motions and a supporting memorandum for summary judgment on RDS's claims against them.

The district court held in its memorandum opinion that RDS had "properly perfected a Mechanic's Lien for the work, repairs,

and or improvements made to the scales and scanners owned by Larry's IGA in the sum of $1,830.00." The district court also found that "the property subject of the purported lien was so enhanced that it took on a new identity" and was, therefore, not covered by the lien under K.S.A. 58-201. In a supplemental memorandum decision, the district court also denied RDS's claim for equitable relief under the theory of unjust enrichment. RDS appealed and Fleming and Colby Foods cross-appealed.

RDS argues that it has a first and prior lien under K.S.A. 58-201 on the entire checkout system for the value of all of the repairs, replacements, and improvements made by RDS. Fleming and Colby Foods both argue that the work was not done by RDS on existing personal property, but was rather a sale of new property and, as such, a lien could only be perfected by filing a financing statement for a purchase money security interest under the UCC, which RDS did not do.

### A. *Standard of Review*

Subsequent to the filing of opposing motions for summary judgment, the district court rendered its decision. K.S.A. 60-256(c) governs summary judgment:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Additionally, in *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995), the court noted:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. . . . On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]"

Summary judgment is a decision made as a matter of law. See K.S.A. 60-256(c). "[A]ppellate review of conclusions of law is unlimited." *Utility Trailers of Wichita, Inc. v. Citizens Nat'l Bank & Tr. Co.*, 11 Kan. App. 2d 421, 423, 726 P.2d 282 (1986). Thus, the

issues raised herein are all subject to de novo review. The facts are not in dispute.

### B. The Scope, Priority, and Timeliness of the Lien Filed Pursuant to K.S.A. 58-201

#### 1. Scope

The crucial question in this appeal is whether, and to what extent, the lien filed by RDS for equipment and services is within the scope of K.S.A. 58-201. There is no reported Kansas decision addressing this issue. The instant action, thus, requires this court to refer to the language of K.S.A. 58-201 and to general principles applicable to statutory liens on both personal and real property.

K.S.A. 58-201, the mechanic's lien statute, provides:

"Whenever any person, at or with the owner's request or consent shall perform work, make repairs or improvements or replace, add or install equipment on any goods, personal property, chattels, horses, mules, wagons, buggies, automobiles, trucks, trailers, locomotives, railroad rolling stock, barges, aircraft, *equipment of all kinds*, including but not limited to construction equipment, vehicles of all kinds, and farm implements of whatsoever kind, a first and prior lien on such personal property is hereby created in favor of such person performing such work, making such repairs or improvements or replacing, adding or installing such equipment and *such lien shall amount to the full amount and reasonable value of the services performed and shall include the reasonable value of all material used in the performance of such services and the reasonable value of all equipment replaced, added or installed.*

. . . .

"If the lien claimant was never in possession of the property, the lien claimant may retain the lien by filing, within 90 days after the date upon which work was last performed, material was last furnished in performing such work or making such repairs or improvements or equipment was last replaced, added or installed in the office of the register of deeds, under oath, a statement of the items of the account and a description of the property on which the lien is claimed, with the name of the owner thereof and the date upon which work was last performed, material was last furnished in performing such work or making such repairs or improvements or equipment was last replaced, added or installed, in the county where the work was performed and in the county of the residence of the owner, if such is known to the claimant." (Emphasis added.)

In *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 14 Kan. App. 2d 714, 718-19, 798 P.2d 511, *rev. denied* 248 Kan. 996

(1990), this·court interpreted K.S.A. 60-1101 and stated the general principles applicable to statutory liens:

"Since mechanics' liens are statutory liens, they can only be acquired in the manner and on the conditions prescribed in the statute. [Citation omitted.] Those claiming a mechanic's lien have the burden of bringing themselves clearly within the provisions of the statute. [Citation omitted.] . . . .

"The general theory of liens is that labor expended and materials supplied in the construction of an improvement add an actual value to the property. The property, therefore, may be properly bound as security for payment of labor which enhances its value. [Citation omitted.] . . . .

"Lien statutes cannot be extended by implication beyond the clear import of the language employed and their operation cannot be enlarged to include activities not specifically embraced."

The district court noted the above principles and examined the language of K.S.A. 58-201, stating that K.S.A. 58-201 gives a first and prior lien to any person who "shall perform work, make repairs or improvements or replace, add or install equipment on . . . equipment." The district court was correct; however, it did not go far enough. The district court held that RDS's lien only covered the conversion of the scales and scanners for a sum of $1,830 and that the balance of the checkout system "was so enhanced that it took on a new identity" and was, therefore, not covered by the lien under K.S.A. 58-201. We agree that the lien filed by RDS covered the $1,830; however, the remainder of the amount claimed was also covered under the lien.

RDS analogizes the replacement of the checkout system equipment to the replacement of parts on a car. Historically, car repair has been a typical application for K.S.A. 58-201. See, *e.g.*, *Reimer v. Davis*, 224 Kan. 225, 229, 580 P.2d 81 (1978) (noting trial court's reference to "garageman's lien").

Fleming and Colby Foods both argue that the transaction between RDS and Larry's I.G.A. was more of a sale of new equipment than a repair of an existing piece of equipment. As such, Colby Foods argues that RDS should have protected itself by perfecting its purchase money security interest pursuant to K.S.A. 1994 Supp. 84-9-312(4). In its decision, the district court implied that RDS should have perfected its purchase money security interest. RDS,

however, completely protected its interest by filing a lien under K.S.A. 58-201.

In *Rouse v. Paramount Transit Co.*, 137 Kan. 858, 861, 22 P.2d 429 (1933), the court interpreted R.S. 1923, 58-201, the predecessor statute to K.S.A. 58-201, and held that a dealer who sells automobile tires, tubes, and rims, and installs them without charge, is not entitled to a lien on the vehicle for the price of the articles. The *Rouse* court noted: "The lien is for the amount and value of services performed, including value of material used in performing the service. The service is primary. The material used to effectuate the service is subordinate and collateral, and this court has so held." 137 Kan. at 860.

The *Rouse* opinion is 62 years old, and the statute has been altered significantly since that decision.

In 1988, the legislature modified 58-201 and specifically included in its coverage the "reasonable value of all equipment replaced, added or installed." L. 1988, ch. 196, § 1. According to the legislative history, the amendment was prompted by the inequities which resulted when the value of the equipment replaced, added, or installed was not covered. See Minutes of Senate Committee on Judiciary, March 28, 1988; Minutes of House Committee on Judiciary, February 18, 1988. The legislature premised the need for the change on the *Rouse* decision. See Attachment V to Minutes of House Committee on Judiciary, February 18, 1988.

RDS essentially replaced and installed a new checkout system. Only the scales, scanners, and checkout stands were retained from the prior system. As noted above: "Lien statutes cannot be extended by implication beyond the clear import of the language employed and their operation cannot be enlarged to include activities not specifically embraced." *Mark Twain Kansas City Bank*, 14 Kan. App. 2d at 719.

K.S.A. 58-201 enumerates places where repairs, improvements, replacements, additions, or installation of equipment can be made—goods, personal property, equipment of all kinds, as well as the traditionally accepted vehicles. RDS claims that the replacement equipment comes under the statutory "equipment of all kinds" category and that the modifications to the scales and scan-

ners constitute repairs or improvements to equipment. We concur with RDS that the lien it filed brings its claims within the purview of the statutory provisions.

## 2. Priority

To the extent that the checkout system is covered by the lien filed by RDS under K.S.A. 58-201, RDS has priority over the prior perfected security interest of Fleming for the services performed and equipment installed by RDS. Statutory liens for services or materials are generally excluded from Article 9 of the Uniform Commercial Code. K.S.A. 84-9-104(c). The *priority* of statutory, possessory liens, however, is governed by Article 9. K.S.A. 84-9-310 gives a possessory, statutory lien "priority over a perfected security interest." Conversely, a priority dispute between a non-possessory, statutory lien and a security interest is not governed by Article 9. See *National Supply Co. v. Case Oil & Gas, Inc.*, 13 Kan. App. 2d 430, 431, 772 P.2d 1255 (1989) (interpreting K.S.A. 55-207); *Church Bros. v. Merchants Nat. Bank*, 559 N.E.2d 328, 330-31 (Ind. App. 1990) (holding that the priority of a nonpossessory mechanic's lien is not governed by Article 9); 8 Hawkland, UCC Series § 9-104:04, p. 199 (1990), p. 87 (1995 Supp.).

K.S.A. 58-201 provides for the creation of liens by both possession and filing. In the instant action, RDS filed in order to create a lien. Thus, the priority of RDS's potential nonpossessory lien is determined outside of Article 9. See *National Supply Co.*, 13 Kan. App. 2d at 431.

K.S.A. 58-201 provides that a lien created under that section shall be "a first and prior lien." Thus, to the extent that the checkout system is covered by a lien filed by RDS under K.S.A. 58-201, RDS's lien has priority over Fleming's perfected security interest. See K.S.A. 84-9-310, Kansas Comment 1983.

## 3. Timeliness

RDS last performed work or services to the checkout system of Larry's I.G.A. on July 8, 1992. On that date, RDS set up the direct store delivery (DSD) system and trained employees on its use. RDS filed its lien on October 6, 1992. K.S.A. 58-201 allows a lien

claimant to retain a lien by filing "within 90 days after the date upon which work was last performed . . . or improvements or equipment was last replaced, added or installed."

July 8, 1992, was the latest date that work at Larry's I.G.A. would qualify RDS for a lien under K.S.A. 58-201. October 6, 1992, was less than 90 days after the July 8 work. Fleming argues that the work done on July 8, 1992, did not relate to the scales and scanners; therefore, the lien statement was not timely filed. Fleming cites no cases to support, nor does it explain, its argument.

The test to determine when a piece of work is completed, thus starting the time running for filing under K.S.A. 60-1101 *et seq.*, is "whether the unfinished work was a part of the work necessary to be performed under the terms of the original contract to complete the job and comply in good faith with the requirements of the contract. [Citation omitted.]" *Manhattan Mall Co. v. Shult*, 254 Kan. 253, 259, 864 P.2d 1136 (1993).

The equipment that was set up and the training that occurred on July 8, 1992, were generally referenced in the sales order of March 5, 1992. Applying the rule applicable to K.S.A. 60-1101 *et seq.* to K.S.A. 58-201 and the instant action, the work performed on July 8, 1992, was necessary to comply with the terms of the contract. Thus, the filing of the lien was timely.

## C. Unjust Enrichment

Even though this court finds that RDS had a valid lien for both equipment and services under K.S.A. 58-201, because the issue of unjust enrichment was also rejected by the district court, it seems appropriate to address the issue. RDS claims that it is entitled to the $42,785 under the equitable theory of unjust enrichment.

The Kansas Supreme Court has noted:

"The basic elements on a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 512, 758 P.2d 738 (1988).

The district court concluded that the first element was not met: "Larry's IGA received the benefit of the contract. The benefit ultimately received by Fleming Companies, Inc. and Colby Foods, Inc. some four months later was resultant from Larry's IGA's financial collapse and not from a benefit conferred upon them by [RDS]."

The district court also relied on the principle that "[e]quitable relief is not available to one who because of his own acts or failure to act has suffered a loss. Equity aids the vigilant and not those who slumber [on] their rights." See *Bowen v. Westerhaus*, 224 Kan. 42, 50, 578 P.2d 1102 (1978) (Owsley, J., dissenting) (addressing equitable estoppel claim).

The district court, noting that RDS did not perfect a purchase money security interest under the UCC, concluded that it "should not invoke the principles of equity to relieve [RDS] from the consequences of its own failure to exercise ordinary care for its own protection." By filing the lien under K.S.A. 58-201, RDS did exercise the appropriate action for its own protection.

Fleming and Colby Foods benefitted from the equipment installed, and services performed, by RDS. Fleming used the equipment as Colby Foods and then sold Colby Foods to Warren. Each entity, from Larry's I.G.A. to Fleming, to Colby Foods, to Warren, knew of RDS's interest in the checkout equipment and the debt owed to RDS.

The question is whether the plaintiff must directly confer the benefit upon the defendant in order to meet the first requirement of unjust enrichment. There is little, if any, Kansas case law to aid in this determination.

In *J. W. Thompson*, the court noted: " 'A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.' " 243 Kan. at 512 (quoting Restatement of Restitution § 110 [1936]). RDS conferred a benefit on Larry's I.G.A. Fleming took over the store knowing of the benefit for which no payment had been made. Each succeeding owner took the store knowing of the benefit for which RDS had not been paid.

The district court noted that neither Fleming nor Colby Foods was a party to the contract between RDS and Larry's I.G.A.; however, the voluntary surrender of collateral from Larry's I.G.A. to Fleming took place on July 8, 1992, the very day RDS completed its work. The fact that neither Fleming nor Colby Foods was a party to the contract with RDS does not prevent recovery for unjust enrichment based on a contract implied in law, or a quasi contract. A quasi contract based on unjust enrichment is " 'raised by the law on the basis of justice and equity regardless of the assent of the parties.' [Citation omitted.]" *Pioneer Operations Co. v. Brandeberry*, 14 Kan. App. 2d 289, 299, 789 P.2d 1182 (1990). A quasi contract is a legal device used to enforce *noncontractual* duties. *Mai v. Youtsey*, 231 Kan. 419, 423, 646 P.2d 475 (1982). " 'The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him.' [Citation omitted.]" *Pioneer*, 14 Kan. App. 2d at 299.

The district court erred in its conclusion that RDS did not confer a benefit upon Fleming and Colby in light of the fact that Fleming assumed operation of the store the day that RDS completed its work, the fact that Fleming knew that the equipment was remaining on the premises, and the fact that Fleming knew RDS had not been paid.

The second element of unjust enrichment is "an appreciation or knowledge of the benefit by the defendant." *J. W. Thompson*, 243 Kan. at 512. The district court found that both Fleming and Warren had knowledge of the new checkout system and that RDS had not been paid. Fleming then established a corporation, Colby Foods, to operate the store. Also, the contract between Fleming and Colby Foods recognized a problem with the ownership of the equipment. Thus, the second element is met.

The third element of unjust enrichment is that "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *J. W. Thompson*, 243 Kan. at 512.

Fleming, then Colby Foods, and eventually Warren, obtained the benefit of the equipment and services provided by RDS because Larry's I.G.A. owed Fleming on a note supported by a security interest.

In 66 Am. Jur. 2d, Restitution and Implied Contracts § 4, p. 947, cited by the *J. W. Thompson* court, the authors note that in order for restitution to be required there must be a showing that "the person sought to be charged had wrongfully secured a benefit, or had passively received one which it would be unconscionable for him to retain." There is no allegation that Fleming or Colby wrongfully secured a benefit from RDS. However, it would be unjust and unconscionable for them to retain the benefit when each knew of the debt owed RDS and that RDS had not been paid.

The district court held that RDS's lien covered the conversion of the scales and scanners for a sum of $1,830. Fleming and Colby Foods argue in their cross-appeal that this holding was error. This court concludes that the district court was correct in holding that RDS possessed a lien for the conversion of the scales and scanners for a sum of $1,830. The district court, however, was in error in stating that RDS did not possess a lien for the value of the equipment. Both Fleming and Colby Foods have been unjustly enriched to the extent of the value of the equipment and services rendered by RDS to Larry's I.G.A.

Affirmed in part and reversed in part.