NOT DESIGNATED FOR PUBLICATION

No. 116,972

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EVA AYALLA,
*Appellant*,

v.

UNIFIED GOVERNMENT of WYANDOTTE COUNTY/
KANSAS CITY, KANSAS, *et al.*,
*Appellees*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed July 7, 2017. Appeal dismissed.

*Eva Ayalla*, appellant pro se.

*Ryan P. Haga*, assistant counsel, for appellee Unified Government of Wyandotte County/Kansas City, Kansas.


Before GREEN, P.J., POWELL and GARDNER, JJ.


*Per Curiam*:  Eva Ayalla appeals from a judgment of the district court dismissing her claims under the Kansas Consumer Protection Act, K.S.A. 50-623 et seq., against the Unified Government of Wyandotte County/Kansas City, Kansas. On appeal, Ayalla argues that the district court erred in dismissing her claims against the Unified Government. Because we conclude that Ayalla's appeal is premature and interlocutory, we cannot reach her substantive arguments. Accordingly, we dismiss this appeal.

1

On July 11, 2013, the Unified Government of Wyandotte County/Kansas City, Kansas (Unified Government), entered into a contract with MS K-MO Construction, LLC (MS K-MO), for project 6001, an emergency sanitary sewer replacement project to be completed near Ayalla's house. The project initially consisted of modifications to two existing manholes, construction of three new precast concrete manholes, and construction of four new line segments of 8-inch PVC pipe totaling about 352 lineal feet. On September 11, 2013, the contract was amended to add additional work.

On December 2, 2013, Angela Rome-Pyper, Ayalla's niece, signed an affidavit alleging the following facts. On or about July 20, 2013, a man named Bob Terry met with Rome-Pyper. Terry told Rome-Pyper that he was the owner of MS K-MO. Terry also told Rome-Pyper that he had been contracted by the city to replace the main sewer on Ayalla's street and that he was also authorized to replace the immediate residential sewers at a reduced cost. Rome-Pyper told Ayalla about Terry's offer. Ayalla then met with Terry and agreed to have him replace her residential sewer. When Terry was about halfway finished with her sewer replacement, Ayalla paid him $3,200. Because the work was not being completed in a timely manner, Ayalla called Willie Jones, a Unified Government engineer, and left a voicemail on his phone relaying her complaints. About 1 week later, on October 2, 2013, Ayalla filed a written complaint with the Unified Government regarding Terry's work on her residential sewer. Ayalla made the written complaint because work on her residential sewer had completely stopped. Her yard was left without sod, and she was unhappy with the condition of the new sidewalks that Terry had poured. Ayalla's niece also swore that Terry told her that he used to deal drugs and that he knew some people that would "take care of" Ayalla if she continued to complain to Willie Jones and the Unified Government.

On August 16, 2014, Schall Engineering Consulting, LLC (Schall), prepared an engineering analysis and report for Ayalla. Ayalla hired Schall to review certain documents that she had requested from the Unified Government relating to project 6001. Schall came to the following conclusions:

2

"I was informed by Ms. Ayalla that while Emergency Repair Project 6001 was being constructed, her neice [*sic*], Angela Rome-Pyper, was approached by Mr. Bob Terry, foreman of the sewer project, and was informed of an offer by the City to pay half the cost of a homeowner's residential sewer line replacement if they were previously connected to manholes and line segments within Project #6001. This was supported by an affidavit submitted to me by Ms. Ayalla. Ms. Ayalla then contacted Mr. Terry and he repeated to her that the city would pay half the costs for residential sewer line replacement if residents would pay the other half. Ms. Ayalla submitted to me a receipt for $3,200.00 for her residential sanitary sewer line replacement paid on August 5, 2013 and signed as received by Bob Terry. Based on the approved change order to the original bid of MS K-MO Construction, LLC, three (3) private lines were paid for by the City at a price of $3,100 each. It is my opinion that Ms. Ayalla should not have been charged to replace her line if other homeowners in the project, under similar circumstances were not charged. I recommend that Eva ask for reimbursement from the City Engineering Department, starting with a call to Willie Jones who was named as the City contact in the agreement with MS K-MO Construction, LLC.

"SPECIAL NOTE: Project #6001 was awarded to MS K-MO Construction, LLC. However, the permit to replace her private sewer line was obtained by Dove Construction Company, Edwin C. Hill, 400 N. Persimmon Circle, Kansas City, Kansas, 66061. Since no other receipts for payments by residents for private line construction were submitted to Ms. Ayalla by the City with other documents related to the project, Ms. Ayalla believes she was the only resident required to make such a payment to the contractor. It should be noted that Ms. Ayalla's residential sewer line replacement was inspected by the Building Inspection Division in a report dated August 2, 2013. The inspector was Jeffrey Hollinshed and he approved 55 feet of sewer line and 1 clean-out. After this inspection, Ms. Ayalla has experienced the following problems with this construction:

1. Her sidewalk concrete replacement was not level and was not scored properly. There are scorings where they are not needed, and no scorings in some locations where they are needed.

2. The clean-out entrance was built into this sidewalk repair, and thus has concrete covering part of the clean-out lid which will make it difficult to open in case of back-ups.

3

3. There is a depressed hole and a visible void under the new sidewalk where the fill in the private line trench has sunk or disappeared. This may result in a future collapse of the sidewalk if not resolved soon.
4. The landscape restoration on her property was not completed. There is mostly dirt and no grass or sod where equipment disturbed Ms. Ayalla's lawn. This disturbed area covers the entire west side of the property's lawn.
5. Silt fencing was placed at the edge of her yard abutting the public sidewalk. The fencing was never removed and has failed to withstand the weight of the soil sliding away from Ms. Ayalla's yard, and now dirt covers the public sidewalk and creates a slipping and falling hazard which is an [*sic*] serious public nuisance and a potential future lawsuit for the City.

"In conclusion, there are several remaining private property defects related to poor sewer contractor workmanship including inadequate landscape restoration, poor sidewalk restoration, and a public nuisance on the sidewalk in the street right-of-way. I would recommend Ms. Ayalla contact Inspector Jeffrey Hollinshed in the Building Inspection Division at 913-573-8631 for a re-inspection of the private line construction with the intent of correcting all remaining problems at no expense to Eva."

On November 1, 2013, the Unified Government wrote to Daniel Morris, the owner of MS K-MO, and informed him of a number of outstanding issues relating to project 6001. The Unified Government wrote Daniel Morris again on December 30, 2013, because MS K-MO had still not completed project 6001 and fixed the issues identified in the November 1, 2013, letter. The December 30, 2013, letter gave notice to MS K-MO that it was in default of its contract with the Unified Government for project 6001. On January 31, 2014, the Unified Government sent Daniel Morris a formal notice of termination for MS K-MO's default under its agreement with the Unified Government for project 6001. On February 13, 2014, the Unified Government sent a letter to Daniel Morris allowing for reconsideration of its termination of the contract with MS K-MO. The letter detailed conditions for MS K-MO's reinstatement. It is unclear from the record whether MS K-MO was reinstated and completed project 6001.

4

On July 12, 2016, Ayalla filed a petition alleging that the Unified Government had violated the Kansas Consumer Protection Act, K.S.A. 50-623 et seq. Ayalla specifically alleged that MS K-MO induced her to enter into a contract for residential sewer replacement under which she paid $3,200 but never received the full benefit of the work. Ayalla also alleged that the "Unified Government was aware that MS K-MO was performing work at Ayalla's residence . . . but 1) failed their duty to inform Ayalla that the work done at her property . . . was not yet authorized and 2) that all others in the immediate neighborhood received the same work at no cost." Ayalla alleged that she complained to the Unified Government but nothing was done. Accordingly, Ayalla alleged "[t]hat MS K Mo [*sic*] had the permission of the Engineering division of the Public Works Department of the Unified Government to commit fraud and leave work unfinished . . . due to Defendant, Unified Government's silence in response toward Ayalla's multiple requests and complaints." She requested itemized damages in a total amount not less than $264,500 plus costs, future attorney fees, and punitive damages.

On August 1, 2016, the Unified Government moved to dismiss Ayalla's suit against it. The Unified Government asserted that it was not a "supplier" under the Kansas Consumer Protection Act, because it did "not engage in or enforce 'consumer transactions' in the ordinary course of business as defined by K.S.A. 50-624(c)." Accordingly, the Unified Government argued that it was "not a proper party to this lawsuit because the KCPA does not apply to it and there is no evidence the Unified Government acted deceptively." Additionally, the Unified Government argued that MS K-MO was a contractor and not an agent of the Unified Government. Thus, the Unified Government contended that it could not be held liable for MS K-MO's actions under Kansas law.

On September 9, 2016, the district court dismissed Ayalla's claim against the Unified Government with prejudice, finding that the Unified Government was not a "supplier" under the KCPA and that the Unified Government did not engage in or enforce "consumer transactions" in the ordinary course of business. The court also found that MS

5

K-MO, and not the Unified Government, allegedly offered Ayalla services and acted deceptively. The court found that MS K-MO was an independent contractor and not the Unified Government's employee. Thus, the court found that the Unified Government was not a proper party to Ayalla's claim. Ayalla filed a timely notice of appeal challenging the dismissal of her claims against the Unified Government.

*Does this court have jurisdiction to hear Ayalla's appeal?*

Before we can reach Ayalla's substantive arguments, the Unified Government challenges whether we have jurisdiction over this appeal. The Unified Government argues that "[u]nder K.S.A. 60-2102, the Appellate Court does not have jurisdiction of Ayalla's appellate action because the District Court's order is not a final order as it did not dispose of all of her claims against all of the parties in her lawsuit as co-defendant MS K-MO was not dismissed from her suit."

K.S.A. 2016 Supp. 60-2102(a)(4) states that "the appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from . . . [a] final decision." Similarly, K.S.A. 2016 Supp. 60-254(b) states in relevant part that

> "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates . . . fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating . . . all the parties' rights and liabilities."

Kansas has a strong policy against piecemeal appeals. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 616, 244 P.3d 642 (2010). The policy against piecemeal appeals is implemented by K.S.A. 2016 Supp. 60-254(b). See *Fredricks v. Foltz*, 221 Kan. 28, 31, 557 P.2d 1252 (1976). "The purpose of requiring a final decision prior to an appeal is to prevent intermediate and piecemeal appeals that extend and prolong litigation

6

and add to the cost of litigation." *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 4, 836 P.2d 1128 (1992). K.S.A. 2016 Supp. 60-254(b) is specifically designed "'to eliminate the need for separate appellate consideration of different elements of a single claim.'" *Henderson v. Hassur*, 1 Kan. App. 2d 103, 109, 562 P.2d 108 (1977). Thus, generally Kansas appellate courts may only review final decisions, and orders that do not dispose of all parties are interlocutory and not subject to review. *Pioneer Operations Co. v. Brandeberry*, 14 Kan. App. 2d 289, Syl. ¶ 1, 789 P.2d 1182 (1990). And "[a]n express direction for the entry of judgment as to one of several defendants, without an express determination that there is no just reason for delay, is insufficient to support an appeal under Rule 54(b)," which is the federal rule identical to K.S.A. 2016 Supp. 60-254(b). *Fredricks*, 221 Kan. at 31; see also *Ullery v. Othick*, 304 Kan. 405, 405-06, 372 P.3d 1135 (2016) (Court of Appeals had jurisdiction to entertain appeal from summary judgment order against one party in multiparty litigation because trial court certified there was "'no just reason for delay.'")

Here, Ayalla alleges a kind of collusion between the Unified Government and MS K-MO. Thus, she alleges a single claim against multiple parties. A review of the district court's order dismissing Ayalla's claim against the Unified Government shows that it is not a final appealable order under K.S.A. 2016 Supp. 60-254(b). Because Ayalla's claim against the Unified Government was dismissed but her claim against MS K-MO remains and because the order does not expressly state that there is no just reason for delay, Ayalla's appeal is interlocutory. Accordingly, we do not have jurisdiction to entertain her appeal at this time.

Appeal dismissed.