(25 P.3d 871)

No. 85,372

REEBLES, INC., *Appellant*, v. BANK OF AMERICA, N.A., *Appellee*.

Opinion filed May 25, 2001.

*Thomas A. Krueger*, of Krueger Law Offices, of Emporia, for appellant.

*W. Joseph Hatley* and *Tammy M. Somogye*, of Lathrop & Gage L.C., of Overland Park, for appellee.

Before PIERRON, P.J., GREEN and BEIER, JJ.

GREEN, J.: Reebles, Inc., (Reebles) appeals from the trial court's judgment granting summary judgment to Bank of America (Bank) in Reebles' breach of fiduciary duty and tortious interference with a contractual relationship claims. On appeal, Reebles contends that

because genuine issues of material fact remained in issue, the trial court erred in granting the Bank's motion for summary judgment. We agree and reverse and remand for trial.

Reebles leased certain commercial real estate to Nautilus of Emporia, Inc. Kristina Brown, owner of Nautilus, operated an exercise center from the property. Brown personally guaranteed the lease for Nautilus.

The Bank made a loan to Brown, and Brown pledged the exercise equipment as collateral for the loan. Brown executed a promissory note and security agreement granting the Bank a security interest in all of her inventory, accounts, equipment, general intangibles, and fixtures. The security agreement provided that "[n]o alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or agreement." The Bank filed a financing statement perfecting its security interest. During the term of the lease, Nautilus failed to pay Reebles rent totaling $6,400.

In December of 1998, Brown and Wade Criqui entered into a written agreement requiring Criqui to purchase Brown's exercise equipment and other assets for $85,000 if certain conditions were met. One of the conditions of sale required that Brown obtain the consent of Reebles to the assignment of the Nautilus' lease to Criqui. Another condition of sale required that "[a]ll accounts payable incurred prior to closing" would be paid from the sale proceeds of $85,000 by the closing agent. A third condition of sale required that the exercise equipment be "free and clear of all" liens. Closing of the transaction was to be completed by Moon Abstract Company.

While the parties were negotiating the sale, Criqui's business partner, Carla Dorcas, contacted Russell Bonitatibus, a vice president with the Bank, regarding the sale of the exercise equipment and the payment of back rent to Reebles from the sale proceeds. The parties dispute what Bonitatibus said regarding payment of the back rent. Bonitatibus testified that he referred Dorcas to Melissa Byington, also a vice president with the Bank. Dorcas offered an affidavit in opposition to the Bank's motion for summary judg-

ment, stating that Bonitatibus told her the back rent would be paid from the proceeds of the sale.

The parties also dispute what Byington said about payment of the back rent from the proceeds. Byington testified that she did not tell Dorcas that the back rent would be paid from the proceeds. Dorcas, on the other hand, offered an affidavit stating that Byington indicated the back rent would be paid from the proceeds of the sale.

According to Dorcas, Byington told her the Bank would close the transaction and would handle the sale in accordance with the contract. Dorcas also testified via affidavit that both Byington and Bonitatibus assured her that the payoff of the back rent would be made to Reebles.

Criqui's affidavit states that he gave a check in the amount of $85,000 to the Bank instead of Moon Abstract Company because the Bank stated that all deductions would be taken out of the check, including the back rent. Criqui and Dorcas met with Bonitatibus at the bank on December 28, 1998. Both Criqui and Dorcas told Bonitatibus the contract provided that they were to close at Moon Abstract Company. According to Criqui, Bonitatibus told them it was unnecessary for Moon Abstract Company to close the transaction.

Based on the alleged representations of Bonitatibus and having been reassured that the back rent would be paid, Criqui and Dorcas gave Bonitatibus a check in the amount of $85,000 on December 28, 1998, expecting the Bank to deduct $6,400 to pay Reebles the back rent. The purchase price of Brown's exercise equipment and other assets was less than the balance due on her note. The Bank applied the whole $85,000 to the outstanding balance on Brown's note. Accordingly, the back rent was not deducted from the purchase price or paid to Reebles.

Reebles sued the Bank for breach of fiduciary duty and tortious interference with a contractual relationship. The Bank moved for summary judgment, arguing that Reebles could not recover on those claims as a matter of law. Reebles also moved for summary judgment, seeking judgment as a matter of law on its claims against the Bank. Jim Rathke of Moon Abstract Company testified by af-

fidavit that had the transaction been presented to him for closing, it would not have been closed "[i]f the [Bank] would not release the lien in order to provide a transfer of the equipment free and clear of all encumbrances."

The trial court determined that the Bank was entitled to summary judgment because the Bank's security agreement gave it priority to the proceeds and because the security agreement was not modified in writing. The trial court further concluded Reebles offered no competent evidence that the damages it claimed were caused by the Bank's actions.

On appeal, Reebles argues that the trial court erred in granting summary judgment in favor of the Bank.

> "The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c)." *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

"When the issue on appeal is whether the trial court correctly granted summary judgment, an appellate court should read the record in the light most favorable to the party against whom summary judgment was entered." *Bi-State Dev. Co., Inc. v. Shafer, Kline & Warren Inc.*, 26 Kan. App. 2d 515, 517, 990 P.2d 159 (1999).

Reebles first contends that the trial court erred in granting the Bank summary judgment on its claim for breach of fiduciary duty. Reebles alleges that the Bank breached a fiduciary duty it owed as the closing agent for the purchase agreement for the sale of the exercise equipment. The Bank asserts that it did not breach any fiduciary duty because it had a perfected security interest in the exercise equipment and because it was entitled to all the proceeds from the sale.

A fiduciary relationship exists where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 261, 553 P.2d 254 (1976). Whether a

fiduciary relationship exists depends on the facts and circumstances of each individual case. The Kansas Supreme Court has refused for that reason to give an exact definition to fiduciary relationships. See *Denison State Bank v. Madeira*, 230 Kan. 684, Syl. ¶ 2, 640 P.2d 1235, *modified on reh.* 230 Kan. 815, 640 P.2d 1235 (1982).

Generally, there are two types of fiduciary relationships: (1) those specifically created by contract or by formal legal proceedings and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions. The determination of the existence of a fiduciary relationship in the second category is more difficult to determine. *Denison State Bank*, 230 Kan. at 691.

Reebles alleges the existence of a fiduciary duty based on the following: (1) that Reebles was a third-party beneficiary of the contract between Brown and Criqui; (2) that the Bank acted as a closing agent for this transaction; and (3) that as the closing agent, the Bank owed a fiduciary duty to Brown, Criqui, and Reebles to close the sale, if possible, according to the terms of the contract between Brown and Criqui.

First, we must determine if Reebles was a third-party beneficiary of the contract between Brown and Criqui. Although the Bank disputes the existence of a valid third-party beneficiary contract, Reebles certainly could be construed as a third-party beneficiary to the contract since the contract provided for payment of "[a]ll accounts payable incurred prior to closing" and authorized the closing agent to pay those accounts "from the proceeds of sale." It is undisputed that Brown owed back rent totalling $6,400 to Reebles prior to closing of the sale. In fact, Reebles could be described as an intended beneficiary because it possessed enforceable rights under the contract entered into between Brown and Criqui. Brown owed Reebles back rent totalling $6,400. Brown agreed to sell the exercise equipment to Criqui for $85,000 for which Criqui promised, orally and in writing, to pay Reebles $6,400 from the sale proceeds in discharge of Brown's debt to Reebles if the sale was completed. As a result, Reebles would be an intended beneficiary of Criqui's promise and would have an enforceable claim against

Criqui for $6,400. See *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 389, 736 P.2d 930 (1987).

Second, the evidence indicates that the Bank acted as the closing agent for the contract between Brown and Criqui. Dorcas testified that Byington told her that the Bank would close the sale in accordance with the sales contract. Third, the evidence further indicates that the Bank failed to close the sale according to the terms of the contract between Brown and Criqui.

As the closing agent, the Bank failed to withhold sufficient funds from the sale proceeds to pay the accounts payable. In its desire to gain the whole $85,000 for itself, the Bank put both Brown and Criqui in a precarious situation. For example, Brown would have remained liable to Reebles for the back rent under her personal guarantee for the Nautilus' lease. As to Criqui, the Bank failed to insure that Criqui's condition of being allowed to assume the Nautilus lease had been fulfilled before accepting Criqui and Dorcas' check for $85,000 on December 28, 1998. Under the sales contract, Criqui expressly made this a condition precedent to his promise to purchase the exercise equipment. Although Criqui and Dorcas never assumed the Nautilus lease, they did not enter into a lease agreement with Reebles until December 29, 1998, after assuring Reebles that its back rent would be paid from the sale proceeds. As a result, when Criqui and Dorcas paid the Bank the $85,000 on December 28, 1998, their condition precedent of obtaining a lease agreement with Reebles had not been fulfilled.

Finally, the Bank's action extinguished Reebles' expectancy of having the back rent paid from the sale proceeds as contemplated by the contract between Brown and Criqui.

All inferences from the evidence must be given to the nonmoving party when deciding a motion for summary judgment. See *Seabourn v. Coronado Area Council, B.S.A.*, 257 Kan. 178, 189, 891 P.2d 385 (1995). Because the material facts giving rise to the alleged fiduciary relationship are controverted, the issue of whether the Bank breached a fiduciary duty owed to Reebles was not appropriate for summary judgment.

Reebles further argues that the trial court erred in granting summary judgment on the issue of tortious interference with a con-

tractual relationship. Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby. *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986). The elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 169, 872 P.2d 252 (1994). The tort of interference with contract is aimed at preserving existing contracts. *Turner*, 240 Kan. at 12.

The Bank argues that although it may have interfered with the sales contract, it was justified in doing so because it was protecting its security interest. It is recognized that not all interference with contractual relationships is tortious. A person may be privileged or justified to interfere with contractual relations in certain situations. *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, 424-25, 370 P.2d 390 (1962).

" 'Justification is the most common affirmative defense to an action for interference. The term 'justification' has been said not to be susceptible of any precise definition. It is employed to denote the presence of exceptional circumstances which show that no tort has been in fact committed and to connote lawful excuse which excludes actual or legal malice. It has been suggested that, rather than to express this defense to interference in terms of justification, it might be more accurately stated to be a matter of privilege; that is, the defendant may show that interference, although it occurred, is privileged by reason of the interests furthered by his conduct.' " *Turner*, 240 Kan. at 12-13 (quoting 45 Am. Jur. 2d, Interference § 27).

The *Turner* court also noted that "[g]enerally, a circumstance is effective as a justification if the defendant acts in the exercise of a right equal or superior to that of the plaintiff, or in the pursuit of some lawful interest or purpose, but only if the right is as broad as the act and covers not only the motive and purpose but also the means used." 240 Kan. at 13 (quoting 45 Am. Jur. 2d, Interference § 27). See PIK Civ. 3d 124.93 (1997 Supp.) ("Justification exists when the defendant interfered in the exercise of a right equal to

or superior to that of the plaintiff and used fair means and good faith for some lawful interest or purpose.").

In determining whether a defendant's conduct in interfering with a contract is improper, the following factors should be considered: (1) the nature of the defendant's conduct; (2) the defendant's motive; (3) the interests of the other with which the defendant's conduct interferes; (4) the interests sought to be advanced by the defendant; (5) the social interests in protecting the freedom of action of the defendant and the contractual interests of the other; (6) the proximity or remoteness of the defendant's conduct to the interference; and (7) the relations between the parties. *Turner,* 240 Kan. at 14 (quoting Restatement [Second] of Torts § 767).

The trial court disposed of this issue by determining that the Bank's security interest in the exercise equipment required that the security agreement be modified in writing and that the sales agreement attempted to change the terms of the security agreement by allowing for distribution of the proceeds out of priority. The rationale, however, misconstrues the purpose of the provision in the sales agreement allowing for payment of back rent from proceeds of the sale. This provision does not attempt to modify the security agreement but instead simply affords the parties an opportunity to modify the security agreement should the Bank agree to do so.

Whether the Bank was justified in allegedly interfering with the sales agreement by allowing the parties to close the sale at the Bank rather than at Moon Abstract Company involves controverted facts. First, the parties dispute whether the outcome would have been different had the contract been presented to Moon Abstract Company for closing. The Bank alleges that there is no dispute as to how the contract would have been handled at Moon Abstract Company, suggesting that the transaction would not have been completed.

It is true that procurement of the Bank to release its lien on the exercise equipment was a condition precedent to the duty of Criqui and Dorcas to purchase the exercise equipment. Moreover, if the Bank had refused to release its lien on the exercise equipment, the sales contract would not have been completed. However, Reebles

presented sufficient facts that, in themselves or by inference, supported a finding that except for the Bank's tortious interference with Reebles' business relationship with Brown, Criqui, and Dorcas, the Bank would have accepted $78,600 ($85,000-$6,400 in back rent) to release its lien on the equipment. Moreover, the Bank's actions not only interfered with the fulfillment of the sales contract but also interfered with the parties' right to conduct negotiations which might have culminated in the fulfillment of the contract.

Viewed in the light most favorable to Reebles, a reasonable juror could find that the Bank had historically participated in short sales. A reasonable juror could further find that the Bank became interested in Criqui and Dorcas' offer of $85,000 and, but for the Bank's representation that it would close the transaction according to the terms of the sales contract, the sales contract would have been fulfilled. Finally, a reasonable juror could also find that the Bank's representation was untrue and made with the intention of eliminating Reebles from the transaction to the Bank's financial gain. As a result, because genuine issues of material fact exist, we find that the trial court erred in granting summary judgment on Reebles' claim for tortious interference with a contractual relationship.

Finally, Reebles argues that the trial court should not have granted summary judgment on the issue of estoppel. Specifically, Reebles argues that the Bank is liable for payment of the back rent because it failed to inform Reebles that it did not intend to make the payment when it closed the transaction. The Bank, however, asserts that Reebles failed to present this argument to the trial court and, as a result, it cannot be raised for the first time on appeal. Issues not raised before the trial court cannot be raised on appeal. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999).

In its petition, Reebles merely raised the claims of breach of fiduciary duty and tortious interference with contract. Because Reebles did not raise estoppel as a cause of action, the issue was not properly presented to the trial court for consideration and may not be raised for the first time on appeal.

This is an unusual case. Normally a properly perfected secured claim such as the Bank's will triumph. Here, the evidence regarding the Bank's reassuring statement and its intermeddling in the closing provide plaintiff with additional causes of action that would not exist in the ordinary commercial transaction.

Reversed and remanded for trial.