NOT DESIGNATED FOR PUBLICATION

No. 122,659

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FRONTIER INVESTMENT BANC CORPORATION,
*Appellant*,

v.

GARY WITHERS,
WITHERS MMI HOLDING COMPANY,
WITHERS DDNRAD PI, LLC, and
DDNRAD PI, LLC,
*Appellees*.


MEMORANDUM OPINION


Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed June 18, 2021. Affirmed and remanded with directions.

*Keynen J. (K.J.) Wall* and *Russell J. Keller*, of Forbes Law Group, LLC, of Overland Park, and *Fritz Edmunds*, of Edmunds Law Office, LLC, of Overland Park, for appellant.

*Sean W. Colligan* and *Courtney J. Harrison*, of Stinson LLP, of Kansas City, Missouri, for appellees.


Before GREEN, P.J., SCHROEDER, J., and WALKER, S.J.


PER CURIAM: Frontier Investment Banc Corporation (Frontier) appeals the grant of summary judgment in favor of Gary Withers, Withers MMI Holding Company, Withers DDNRAD PI, L.L.C., and DDNRAD PI, L.L.C., which included former senior management of Withers' business, EiKO, Ltd. (Withers) because the district court found Frontier had been overpaid by Withers based on Frontier's improper calculation of its

1

commission for obtaining a buyer for Withers' business. Frontier also claims the district court erred by denying its motions for summary judgment. We have exhaustively reviewed the record and agree with the district court that Withers overpaid Frontier its fee at the conclusion of the 2013 sale. We find no error by the district court. We affirm and remand for further proceedings.

## FACTS

In 2007, Frontier entered into an engagement agreement with Gary Withers to assist in identifying potential buyers for and marketing of the sale of Withers' lighting business, EiKO, Ltd. Under the terms of the agreement, Frontier would receive a transaction fee based on an earnings multiple as determined by the aggregate consideration exchanged at the time of sale. The earnings multiple would be calculated by dividing the aggregate consideration by EiKO's last 12 months' earnings before income taxes, depreciation, and amortization (LTM EBITDA). Based on this calculation, Frontier would receive a 2.5 percent transaction fee if the earnings multiple was less than 7.0 and a 3 percent fee if it was between 7.0 and 8.5. The aggregate consideration for the transaction would be determined by:

- the amount paid for equities sold, exchanged, or purchased in the transaction;
- the principal amount of all indebtedness for borrowed money as set forth on EiKO's most recent monthly balance sheet prior to the transaction;
- any additional amounts paid into escrow;
- any earn-outs or "contingent payments" made in connection with the transaction; and
- the value of any retained or acquired interest EiKO may establish as a result of the transaction valued as of the date immediately before the transaction.

In 2013, Frontier identified a potential buyer, who ultimately submitted a letter of intent (LOI) to purchase EiKO. The LOI anticipated $34.95 million would be exchanged at closing for 100 percent of EiKO's equity interests and all existing EiKO debt would be transferred in the transaction. This would result in the formation of a new business entity, EiKO Holdings, LLC, in which the buyer would have a 70 percent interest, Withers would receive a 25 percent rollover interest, and EiKO senior management would receive a 5 percent rollover interest. At closing, the following was exchanged between Withers and the buyer:

- $11,165,000 for buyer's securities;
- $797,000 for EiKO management's rollover interest;
- $3,988,000 for Withers' rollover interest; and
- $13,535,000 for corporate debt as reflected by EiKO's most recent balance sheet prior to the transaction.

Because Withers would gain a contingent interest in EiKO Holdings, the parties agreed to an amendment to the engagement agreement, providing Withers would pay a transaction fee of $1,109,000 at closing and an additional 3 percent transaction fee for any subsequent sale of the 30 percent contingent interest. At closing, Frontier collected a 3 percent transaction fee based on its approximately $37 million calculation of the aggregate consideration. Frontier represented it was entitled to this fee based on an earnings multiple between 7.0 and 8.5, estimating EiKO's LTM EBITDA to be between $6.132 million and $8.028 million. Frontier asserted the total value of the company was approximately $52.8 million based on an extrapolation of the 70 percent interest transferred to the buyer in the 2013 transaction.

In 2015, certain assets of EiKO Holdings were sold without Frontier's participation. Based on his contingent interest, Withers received a payment for $2,312,969.73. Frontier later learned of the 2015 transaction and demanded additional

3

payment, which Withers refused. Frontier filed suit, alleging claims for breach of contract; breach of good faith and fair dealing; fraudulent misrepresentation; negligent misrepresentation; and tortious interference with contract and further seeking a declaratory judgment that Withers was obligated to pay an additional transaction fee. Withers filed an answer, asserting counterclaims for unjust enrichment; breach of fiduciary duty; fraudulent inducement, or, alternatively, mutual mistake, recission, and reformation; and fraudulent misrepresentation.

Withers moved for summary judgment on all of Frontier's affirmative claims as well as his counterclaims for unjust enrichment and breach of fiduciary duty. Frontier moved for summary judgment on all of its affirmative claims and all of Withers' counterclaims. The district court denied Frontier's motion for summary judgment on its affirmative claims, finding Frontier had already been paid in full for Withers' contingent interest in the 2013 transaction. The district court concluded because Frontier admitted it erroneously calculated the aggregate consideration by including an extra $4.8 million cash consideration, it had already been paid the fee for all rollover interest, which was roughly equal to this amount. Moreover, because Frontier incorrectly stated the transaction fee was for only 70 percent of the business, it erroneously calculated the earnings multiple, resulting in a higher transaction fee percentage. Accordingly, all of Frontier's affirmative claims failed because they were premised on the allegation Withers failed to make further payments when, in fact, Withers overpaid for Frontier's services in the first transaction. Accordingly, the district court granted Withers' motion for summary judgment on Frontier's claims and dismissed them.

The district court found Withers established the necessary elements for his breach of fiduciary duty claim but reserved judgment until trial because factual issues remained as to Frontier's potential statute of limitations defense. The district court further found Withers had established two of the three elements needed for his unjust enrichment claim: (1) Frontier had received a benefit from Withers and (2) Frontier knew or

4

appreciated it had received the benefit. But the district court held summary judgment was inappropriate because the third element—whether the circumstances under which Frontier accepted or retained the benefit made it inequitable—was a factual question for trial. The district court denied Withers' motion for summary judgment on his breach of fiduciary duty and unjust enrichment counterclaims and denied Frontier's motion for summary judgment on all of Withers' counterclaims.

The district court certified its summary judgment ruling as an appealable order pursuant to K.S.A. 2020 Supp. 60-254(b), and Frontier has timely appealed. Further proceedings in the district court have been stayed pending resolution of this appeal. Additional facts are set forth as necessary herein.

ANALYSIS

The issues on appeal arise from the district court's ruling on competing summary judgment motions involving a contract dispute. The relevant standards of review are equally applicable to all issues on appeal.

*Standards of Review*

*Summary Judgment*

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive

5

issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

"[A]n issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). In other words, "if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue" for purposes of summary judgment. *Northern Natural Gas Co.*, 296 Kan. at 934.

*Contract Interpretation*

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). The question of whether a written instrument is ambiguous is a question of law subject to de novo review. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015).

Additionally,

"'[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results

which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citations omitted.]'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

I. THE DISTRICT COURT PROPERLY DENIED FRONTIER'S MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE CLAIMS.

The district court concluded, for all the complexity surrounding the transactions and all the various terms of art used in the realm of mergers and acquisitions, the relevant legal questions were quite straightforward:  "Did Withers overpay for Frontier's services? If not, is Frontier entitled to a further payment pursuant to an amendment to the Engagement Agreement?" The district court found "the answer to these questions is unexpectedly simple . . . because this merely requires the Court to plug numbers into the formula provided by the Engagement Agreement." The biggest problem for Frontier is the district court held the proper numbers were those provided by Withers. In contrast, the district court held Frontier did "not provide sufficient evidence as to how it reached" its aggregate consideration calculation. Quite problematic with Frontier's briefing of this issue is it argues it correctly calculated the aggregate consideration for purposes of the 2013 transaction without any citation to the record in support thereof. In essence, the district court rejected Frontier's claim because it was not satisfied there was an evidentiary record to support it. On appeal, Frontier argues the district court's conclusion was incorrect, again without citation to record evidence.

Even ignoring the general lack of record support in Frontier's analysis, its explanation of the point is unpersuasive. The issue is whether Frontier incorrectly inserted the relevant numbers into the formula contemplated by the engagement agreement to determine the value of the transaction. Frontier tries to justify a second transaction fee on Withers' contingent interest by claiming it should have been counted in the aggregate consideration realized in the 2013 transaction. And it became due and

7

owing when the contingent note was monetized in subsequent transactions. Essentially, Frontier's proposed valuation has Withers paying a transaction fee on 130 percent or more of the total value of the business. Such an interpretation leads to an absurd result—one this court cannot abide. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963.

Either Frontier was entitled to be paid a transaction fee for the full value of the business (including Withers' contingent interest) in 2013, or Frontier was entitled to a transaction fee for only the 70 percent interest Withers transferred in 2013 and the rest became due and owing when Withers later sold it. Frontier was not, however, entitled to have its cake and eat it too by charging Withers a transaction fee on the contingent interest in the 2013 sale and later seeking another payment when he sold the same interest in 2015.

A. *The district court correctly determined the aggregate consideration.*

Frontier argues the district court incorrectly calculated the aggregate consideration for the 2013 transaction. Frontier repeatedly asserts the district court erroneously adopted the buyer's preferred "enterprise value" method. However, as Withers points out, the district court obtained the relevant figures from the buyer's sources and uses of funds table and the debt reflected from EiKO's balance sheet as of the day prior to the 2013 transaction. And the district court found discrepancies between the buyer's proposed valuation from the LOI and the relevant figures to determine aggregate consideration.

Annex A to the engagement agreement provides the following items were to be used in calculating the aggregate consideration:

- The amount paid for equities sold, exchanged, or purchased in the transaction;
- The principal amount of all indebtedness for borrowed money as set forth on EiKO's most recent monthly balance sheet prior to the transaction;

8

- Any additional amounts paid into escrow;
- Any earn-outs or "contingent payments" made in connection with the transaction; and
- The value of any retained or acquired interest EiKO may establish as a result of the transaction valued as of the date immediately before the transaction.

The district court determined the following numbers applied to its calculation of aggregate consideration:

- $11,165,000 paid for securities by buyer (representing 11.165 million LLC units for 70 percent interest);
- $797,000 for securities to EiKO management (representing 797,000 LLC units for management's 5 percent rollover interest);
- $3,988,000 for exchanged owner equity (representing 3.988 million LLC units for Withers' 25 percent rollover interest);
- Indebtedness of $13,535,000 (as reflected by EiKO's balance sheet on October 31, 2013); and
- The contingent note payment of $2,312,970 from the 2015 transaction.

Thus, the district court determined the aggregate consideration was $29,435,000 for the 2013 transaction and the additional payment of $2,312,970 on the contingent note in the 2015 transaction increased the total aggregate consideration to $31,797,970. The district court noted its calculations were "supported by Withers' attached exhibits." The district court further found:  "Only one party has provided reliable data, supported by competent evidence, to aid the Court . . . that party being [Withers]." Frontier fails to show any error in the figures relied on by the district court and offers no pertinent citations to the record supporting a different calculation.

9

B.   *The district court properly determined the amount of debt transferred.*

Frontier's next argument involves a convoluted exercise in creative arithmetic, claiming the district court "relie[d] on adjusted debt balances reflecting adjustments made because of the recapitalization transaction, rather than the value of the new debt consideration exchanged in the 2013 transaction." Frontier asserts:  "The new debt exchanged in the 2013 Transaction included a $6.024 million Revolver note and the $15 million Term A Loan, for a total of $21.024 million." Oddly, Frontier claims the district court erred because "the Ownership Group and Buyer identified this new debt as part of the 'total consideration' to be exchanged in the 2013 Transaction." This argument conflicts with Frontier's repeated complaints the district court relied on a valuation method preferred by the buyer as opposed to the language of the parties' contract. Frontier's claim lacks support in the plain language of the parties' contract and is contrary to the uncontroverted facts established in the record.

Annex A of the parties' agreement defines aggregate consideration as "the principal amount of all indebtedness for borrowed money as set forth on the most recent monthly balance sheet of the Company prior to the consummation of such Transaction." The next section of Annex A provides, in relevant part:  "[T]he total consideration paid for such assets (including without limitation the principal amount of all indebtedness for borrowed money *assumed or extinguished as a result of a Transaction*) shall be included as part of the Aggregate Consideration." (Emphasis added.) The amount of the revolver note and Term A loan appear in the buyer's sources of funds table from the LOI and in the buyer's sources of funds in the purchase agreement.

Frontier fails to explain how "new debt" constitutes "borrowed money assumed or extinguished as a result of [the transaction]." Rather, Annex A specifically provides debt was to be determined from the "most recent monthly balance sheet of the Company prior

10

to the consummation of such Transaction." Thus, Frontier's argument is inconsistent with the plain language of the contract.

But even assuming the revolver note and Term A loan *could* have been considered debt exchanged, assumed, or extinguished in the transaction, the district court explained there were inconsistencies in the buyer's anticipated valuation and the ultimate value thereof. First, it is important to note the LOI was dated June 28, 2013. EiKO's balance sheet was current through October 31, 2013—reflecting $13,535,000 of revolving credit debt. The new debt figure as of November 2013, i.e., within one month of the transaction, was $13,393,000 of long-term third party debt. The district court noted the buyer incorrectly added together what the buyer referred to as "mezzanine debt" (estimated at $4,950,000) and "senior debt" (estimated at $17,500,000), for a total debt of $22,450,000—roughly equivalent to the combined figures of the revolver note and Term A loan identified in the LOI. But the district court found the discrepancy between the buyer's estimate and EiKO's balance sheet was due to a "[s]maller debt than anticipated." And EiKO's balance sheet as of the time of the LOI reflected a revolving debt liability of only $10,508,000.

We find support in the record the buyer overestimated any amount of debt that would be created, assumed, or paid off as a result of the sale. Further, the purchase agreement between Withers and the buyer reflected EiKO had a "Company Indebtedness" of $13,558,577.42, whereas the revolver note and Term A loan were "Debt Financing EiKO Global DDA Account." The purchase agreement confirmed $13,558,577.42 was assigned by the buyer at closing to "Payoff Company Indebtedness to Old Lenders." In other words, the $21.024 million represented debt the buyer incurred through financing for the transaction. It was not "borrowed money *assumed or extinguished* as a result of [the transaction]." (Emphasis added.) The buyer assumed or extinguished EiKO's existing debt—$13.56 million. The buyer separately assumed *its own* debt—$21.024 million—as a source of funds for the purchase, not as consideration exchanged in the transaction.

11

Consistent with Annex A, the district court properly relied on the debt figure demonstrated by EiKO's most recent balance sheet prior to the transaction.

C.   *A different debt figure would not disturb the district court's conclusion.*

Even further assuming the district court erred in its calculation of debt, Frontier offers no persuasive reason, nor would it be in any way mathematically sound, to conclude the $21.024 million total of the revolver note and Term A loan establishes error in the district court's conclusion Frontier was not entitled to additional payment based on Withers' subsequent sale of his contingent interest.

EiKO's LTM EBITDA was approximately $7,151,182. Substituting the $21.024 million debt figure in place of the district court's calculation results in an aggregate consideration of $36,974,000 for the 2013 transaction and an earnings multiple of 5.17. As per the terms of the parties' agreement, an earnings multiple less than 7.0 entitles Frontier to a 2.5 percent transaction fee. Two-and-a-half percent of $36,974,000 is $924,350. Withers paid Frontier $1,109,220 for its assistance in the 2013 transaction. Assuming further still Frontier was entitled to additional compensation when Withers' contingent interest was monetized, Frontier would only be entitled to $57,824.25 more ($2,312,970 x .025). Thus, Frontier would, at most, have been entitled to $980,924.25. Frontier has already received payment in excess thereof and is, therefore, entitled to nothing more. Even assuming there were some errors in the district court's calculation, dismissal of Frontier's affirmative claims was still proper. At most, these calculations would affect Withers' potential damages on his counterclaims, which is a matter the district court has not yet ruled on.

D.      *To the extent Frontier explains the basis for its calculation, its valuation of the aggregate consideration is factually erroneous.*

Although not clear in its brief, Frontier seems to justify its actions based on a factual assertion the buyer paid "$36.974 million of non-contingent consideration . . . for its 70% equity position in [EiKO]." Frontier then attempts to extrapolate this to a total value of $52.82 million. Based on this figure, Frontier claims Withers' 30 percent contingent interest was worth $15.846 million. Frontier again relies on faulty arithmetic to justify its prior computational errors. While Frontier's assertion as to how much debt was transferred in the 2013 transaction is not supported in the record, it further fails to recognize—regardless of the proper debt figure—the sale extinguished *all* debt for which Withers may have been responsible. Withers only retained an interest in the 3.988 million LLC units, which were valued at $1 per unit. The buyer acquired a 70 percent interest in EiKO through the transfer of 11.165 million LLC units also valued at $1 per unit. Frontier's calculation of Withers' contingent interest would require us to accept that the buyer's 70 percent interest was only worth $11.165 million, whereas Withers' 30 percent interest was worth $15.846 million. As Withers points out, this discrepancy invites only two conclusions—either Frontier is incorrect in its valuation of Withers' interest or Frontier brokered a sale of 70 percent of EiKO for less than one-third its fair market value.

Frontier's explanation is little more than a circuitous exercise lacking in evidentiary support. Essentially, Frontier supports its aggregate consideration calculation based on what it charged Withers at closing. But the relevant issue is whether Frontier *correctly* determined the fee at closing. Frontier cannot rely solely *on* its actions as justification *for* its actions. Under Frontier's rationale, the earnings multiple must have been more than 7.0 because it charged Withers a 3 percent transaction fee. Accordingly, Frontier's aggregate consideration calculation had to be more than $50.06 million

13

($7,151,182 LTM EBITDA x 7 = $50,058,274) because a lesser number would not justify a 3 percent transaction fee.

Frontier merely works backwards from what it charged to assign an aggregate consideration value ([$1,109,220 / .03] / .70 = $52,820,000). But this does nothing more than demonstrate the numbers Frontier relied on for charging the transaction fee. It does not demonstrate those numbers were correct and supported by the record. Moreover, Frontier's extrapolation implicitly attributes an erroneous contingent interest retained by Withers in the buyer's interest and EiKO's corporate debt because it extrapolates *all consideration* exchanged in the 2013 transaction to determine the value of Withers' contingent interest.

Frontier further fails to address an important factual finding by the district court. The district court found Frontier admitted it overstated the "cash consideration" paid for EiKO in the 2013 transaction by $4.8 million. The district court determined Frontier falsely stated it assigned $37 million as the aggregate consideration for 70 percent of EiKO because the $4.8 million it overstated equaled the 30 percent contingent interest retained by Withers and EiKO management. Accordingly, Withers owed nothing more because Frontier had been paid a commission on 100 percent, not 70 percent, of the value of the business in the 2013 transaction.

In its briefing, Frontier fails to explain the effect of the district court's determination that Frontier admitted to overstating the cash consideration exchanged at closing. The deposition testimony of George Nicholson, who prepared Frontier's fee calculation, confirmed Frontier's cash consideration figure was incorrect. Frontier's calculation was erroneous, and it offers no justification *for* its calculation aside from an extrapolation *of* its calculation, which, in and of itself, leads to an erroneous valuation not supported in the record.

14

E.      *The 2013 amendment to the engagement agreement does not entitle Frontier to additional payment.*

Finally, Frontier attempts to justify its actions by claiming its calculation controls as an amount agreed to by the parties under the language of the 2013 amendment. Frontier claims the amendment has controlling legal effect because it specified a transaction fee of $1,109,000 at closing and a 3 percent transaction fee on any future sale of Withers' contingent interest. Frontier asserts the district court's conclusion rendered this amendment meaningless. The problem with Frontier's argument is the 2013 amendment did not nullify or otherwise render inapplicable the terms of the original engagement agreement. Rather, the amendment clearly stated: "Except as specifically set forth in this Amendment to the Engagement Agreement, the Engagement Agreement (and each of the provisions set forth in the Engagement Agreement) shall remain unchanged and shall be in full force and effect."

The amendment merely added a section to the engagement agreement releasing EiKO from further responsibility after closing, providing Withers and the former ownership group would assume the responsibilities previously applicable to EiKO under the engagement agreement. In other words, the buyer assumed no obligations. This section further provided the former ownership group had an

> "obligation to pay to Frontier, if that obligation arises pursuant to the terms of this letter agreement, a Transaction Fee equal to Three Percent (3%) of the Aggregate Consideration (established as a result of the applicable provisions of this letter agreement and the Transaction closed on or about October 31, 2013 (the 'Initial Transaction'))."

The problem with Frontier's argument is there was no aggregate consideration separately established as a result of the amendment. Rather, the amendment confirmed the provisions of the engagement agreement "shall remain unchanged and shall be in full

15

force and effect." The appropriate valuation was to be determined from "the Transaction closed on or about October 31, 2013." This remained subject to the aggregate consideration calculation set forth in Annex A. And the transaction fee to which Frontier was entitled at closing was still controlled by Section 5(e) of the engagement agreement. The amendment further acknowledged the parties' obligations arose "[a]s a result of such transactions referenced and contemplated by the Purchase Agreement" between Withers and the buyer.

As previously discussed herein, the purchase agreement and EiKO's balance sheets properly support the district court's aggregate consideration calculation. Those figures controlled the applicable transaction fee under the engagement agreement. And the terms of the engagement agreement remained in full effect under the amendment. Frontier cannot circumvent the controlling terms of the engagement agreement based on a misstatement or misrepresentation in the amendment of the fee to which it was entitled under the engagement agreement. Frontier admitted the consideration exchanged at closing was misstated and has not explained the effect of this misstatement in its briefing.

F. *We decline to address Withers' alternative basis for affirming the district court's ruling.*

Withers argues we should alternatively affirm the district court's ruling because Frontier was not entitled to collect a transaction fee for subsequent sales in which it was not involved. The district court did not rely on this rationale in its ruling. We decline to address Withers' argument because it is effectively moot. The district court correctly determined Frontier already received payment for the contingent interest in the 2013 transaction. Frontier would be entitled to no further payment regardless of whether it procured the buyer for the subsequent sales.

16

II.     WITHERS WAS ENTITLED TO SUMMARY JUDGMENT ON FRONTIER'S AFFIRMATIVE
        CLAIMS.

Frontier unpersuasively argues that even if it was not entitled to judgment as a matter of law on its affirmative claims, there were contractual ambiguities and disputed record evidence precluding the district court from granting summary judgment in favor of Withers.

This point is largely a continuation of the first issue. Withers moved for summary judgment on Frontier's affirmative claims, seeking dismissal of the same. As previously discussed herein, there is no material dispute of fact as to whether Frontier was entitled to additional payment. Frontier had already been paid everything it was entitled to and more. Because all of Frontier's affirmative claims relate to an allegation Withers *underpaid* based on the parties' contract, summary judgment was proper.

A.      *No genuine dispute of material fact*

Frontier incorrectly asserts the district court erred in its calculation of the debt exchanged in the transaction. Yet, even assuming Frontier was correct, Withers has satisfied his entire obligation. Dismissal of Frontier's affirmative claims would still be proper, albeit likely warranting instruction for the district court to adjust its calculation of the amounts paid and owed by the parties in the proceedings on remand. But because an adjusted debt figure would still warrant dismissal of Frontier's claims, it is not a disputed material fact. Thus, it does not warrant reversal of the district court's decision. See *Northern Natural Gas Co.*, 296 Kan. at 934. It would only merit correction as a prudential matter in the interest of judicial economy to avoid a potential law-of-the-case argument in subsequent proceedings. However, we find the district court correctly determined the debt exchanged in its aggregate consideration calculation.

17

Frontier further unpersuasively argues there are material disputes of fact as to the appropriate valuation method. But the district court held Frontier did "not provide sufficient evidence as to how it reached" its aggregate consideration calculation. On appeal, Frontier fails to cite clear record evidence contradicting the district court's finding. Instead, Frontier offers a mathematically unsound explanation contrary to the terms of the parties' agreement. Frontier continues to press its argument that the district court relied on a valuation method not provided under the parties' contract, but we find the record shows quite the opposite.

### B.    *No contract ambiguity*

In the first issue, Frontier argues it is entitled to judgment as a matter of law based on the unambiguous language of the parties' agreement. In this issue, Frontier alternatively argues Withers was not entitled to judgment as a matter of law because there could be ambiguities in the language of the parties' agreement. Frontier's argument on this point is unpersuasive. Notwithstanding the fact Frontier argues the contract both is and is not ambiguous, Frontier offers no persuasive justification for its argument. Frontier merely contends because it interprets the contract differently than the district court, there is more than one reasonable interpretation. However, Frontier fails to explain *how* its interpretation is reasonable. Based on Frontier's failure to fully explain the point, we find its argument wholly unavailing. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issues not adequately briefed deemed waived or abandoned). We further find Frontier's interpretation is unreasonable for the reasons previously addressed herein. Because Frontier has failed to show any genuine dispute of material fact or ambiguity in the contract, the district court's grant of summary judgment on Frontier's affirmative claims was not error.

III.    THE DISTRICT COURT DID NOT ERR IN ADDRESSING WITHERS' COUNTERCLAIMS.

A.    *The district court properly ruled on Withers' unjust enrichment and breach of fiduciary duty claims.*

The district court found Withers had established most elements for both of these claims but reserved judgment for trial because a few factual issues required further development.

1.    *Breach of fiduciary duty*

The district court found Withers established all three elements required for his breach of fiduciary duty claim. Still, it recognized Frontier asserted a defense based on the statute of limitations and the record was unclear as to when Withers' injuries became ascertainable. Because overlapping factual issues remained to be resolved regarding Withers' fraud-related claims, i.e., whether Frontier prevented Withers from timely discovering his injuries through fraudulent concealment, the district court denied Withers' motion for summary judgment. But because the district court was satisfied Withers otherwise established all necessary elements, it also denied Frontier's motion for summary judgment on this claim.

> "'A fiduciary relationship exists where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.' *Reebles, Inc. v. Bank of America, N.A.*, 29 Kan. App. 2d 205, 208, 25 P.3d 871, *rev. denied* 272 Kan. 1419 (2001). . . .

> "Two types of fiduciary relationships exist:  (1) those specifically created by contract such as principal and agent and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each

19

other and to the questioned transactions. [Citations omitted.]" *Dana v. Heartland Management Co., Inc.*, 48 Kan. App. 2d 1048, 1067, 301 P.3d 772 (2013).

To establish a claim for breach of fiduciary duty, Withers must prove: (1) a fiduciary relationship existed; (2) Frontier owed Withers a duty as a result of the fiduciary relationship; and (3) Frontier breached its duty. See *Peterson ex rel. Peterson v. Community Living Opportunities, Inc.*, No. 99,545, 2008 WL 5401456, at *3 (Kan. App. 2008) (unpublished opinion); see also *Cargill Meat Solutions v. Premium Beef Feeders*, 168 F. Supp. 3d 1334, 1339 (D. Kan. 2016) (citing *Peterson*). Here, the district court found a fiduciary relationship existed based on the confidence Withers placed in Frontier due to Frontier's representation of its expertise in the area of mergers and acquisitions; Frontier owed Withers a duty to properly calculate the transaction fee; and Frontier breached this duty by incorrectly calculating the fee and collecting more than it was owed.

Frontier argues no fiduciary duty can be implied under the circumstances because the parties' contract excluded such duty. Specifically, Frontier relies on language from the engagement agreement, which states, in pertinent part: "[A]ll opinions or advice . . . given by Frontier . . . are intended solely for the benefit and use of [EiKO] . . . in considering the Transaction or potential Transaction to which they relate, and . . . no such opinion or advice shall be used for any other purpose . . . ." The problem with Frontier's argument is it was not offering "opinions or advice . . . in considering the Transaction or potential Transaction to which they relate" when it stated the applicable transaction fee. Frontier was making a factual representation it was entitled to specific compensation per the terms of the parties' agreement. Frontier cannot escape its duty to properly inform Withers as to the computation of the transaction fee by claiming its affirmative representation of material fact was merely an opinion. To the extent Frontier actually wants us to accept its representation of the transaction fee owed by Withers was an opinion, not an assertion of fact, its arguments in the first and second issues are entirely

20

undercut as a result. In any event, this argument is misplaced because, here, the district court properly relied on the facts from the record, not subjective opinions of the parties, to resolve issues on summary judgment. See *Patterson*, 307 Kan. at 621.

### 2.   *Unjust enrichment*

Frontier fails to properly address the district court's findings regarding Withers' unjust enrichment counterclaim. It merely refers back to its unpersuasive argument regarding the breach of fiduciary duty claim, asserting the same argument "demonstrates genuine issues of material fact regarding the elements of unjust enrichment." But Frontier did not address the unjust enrichment claim in that portion of its brief, and its argument was specific to a *legal* argument regarding the breach of fiduciary duty claim, as opposed to more general *factual* arguments. We deem Frontier's argument on this point waived due to improper briefing. See *In re Marriage of Williams*, 307 Kan. at 977. However, even considering the point on its merits, the district court properly determined Withers established the first two elements of his unjust enrichment claim:  (1) Withers conferred a benefit upon Frontier; and (2) Frontier knew or appreciated the benefit it had received. See *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan. App. 2d 833, 841, 908 P.2d 1315 (1995). Based on the undisputed material facts in the record, there can be no reasonable argument to the contrary.

### B.   *Frontier's motion for summary judgment on Withers' fraud-related counterclaims was properly denied*.

Frontier argues the district court erred in denying its motion for summary judgment on Withers' fraudulent misrepresentation and fraudulent inducement of contract counterclaims. Frontier asserts Withers' claims must fail because he did not justifiably or reasonably rely on Frontier's calculations. Frontier's argument is generally unpersuasive insofar as Withers necessarily relied on Frontier's calculation by paying what Frontier

21

claimed he owed. Whether Withers' reliance on Frontier's calculations was justifiable or reasonable remains a disputed question of fact. Contrary to Frontier's claims, it was not undisputed that Withers relied on the advice of his attorneys and financial advisors. Withers testified in his deposition he relied solely on Frontier. Withers' attorneys and financial advisors likewise testified they did not offer advice relevant to the transaction fee.

Frontier's argument that Withers cannot prevail on his claims because he had "superior access" to EiKO's financial records is likewise unpersuasive. As Withers points out, the issue is not whether he had access to the information, it is whether he understood the information. The extent to which Withers understood the relevant bases for Frontier's fee calculation is a factual question that remains to be resolved at trial. The district court correctly denied Frontier's motion for summary judgment on these claims. See *Patterson*, 307 Kan. at 621.

Affirmed and remanded for the district court to resolve the remaining factual issues.